## STATE v. THEODORE FREDERICK SPREIGL.

139 N. W. (2d) 167.

December 17, 1965—Nos. 39,466, 39,617.

*Neumeier, Rheinberger, Eckberg & Kimmel,* for appellant.

*Robert W. Mattson,* Attorney General, *William B. Randall,* County Attorney, and *Henry W. Pickett, Jr.,* Assistant County Attorney, for respondent.

OTIS, JUSTICE.

Defendant has been found guilty of taking indecent liberties with his 11-year-old stepdaughter, Sandra, and appeals from the judgment of conviction and from an order denying his petition for a writ of coram nobis.

Sandra testified that on Sunday afternoon, May 6, 1962, defendant took her to the basement of an unfinished house adjacent to her home and committed on her what amounted to an unaccomplished act of sexual intercourse. Over defendant's objection, Sandra disclosed that during the previous year, at intervals of 2, 3, or 4 weeks, defendant compelled her to indulge in acts of fellation with him in the bathroom of their home. In addition, the court permitted another stepdaughter, Pamela, then 10 years old, to testify that every week or two for an unspecified period of time the defendant forced her to commit similar acts of perversion. A stepson, Gerald, also 10, testified to one such offense committed by his stepfather in April 1962. Neither the children's mother nor defendant

took the stand, and no testimony was introduced on his behalf except that of two school nurses who described the program on sex education for adolescent girls presented at the school which Sandra attended. Counsel for defendant requested an instruction that the jury disregard all evidence of defendant's prior misconduct except that for which he was being prosecuted, and moved that the evidence of other offenses be stricken. The motion was denied. The jury brought in a verdict of guilty on June 19, 1962. In February 1964 defendant petitioned for a writ of coram nobis based on affidavits submitted by a fellow employee and by defendant's mother which, in effect, attempted to establish an alibi.

Defendant assigns as error (1) the court's refusal to exclude the testimony of Sandra, Pamela, and Gerald concerning prior acts of fellation; (2) the failure of the court to give a cautionary instruction, sua sponte, with respect to the jury's consideration of the prior offenses; and (3) the court's refusal to grant the writ of coram nobis.

■ The basic issue is whether the unquestioned relevance of testimony that a defendant has committed other sex offenses, if true, gives it sufficient probative value to outweigh the patent unfairness which results to an innocent defendant who is confronted with charges against which he is not prepared to defend, which are inflammatory in the extreme, and which emanate from witnesses who are manifestly susceptible to influence and suggestion. We are of the opinion that under the circumstances of this case the challenged testimony should not have been received without prior notice of the state's intention to offer it. There must therefore be a new trial.

■ Subject to specific exceptions which have evolved in this country, our court has consistently adhered to the common-law rule excluding evidence connecting a defendant with other crimes, except for purposes of impeachment under Minn. St. 610.49 if he takes the stand on his own behalf.[1]

---

[1] State v. Hines, 270 Minn. 30, 39, 133 N. W. (2d) 371, 377; State v. Sorenson, 270 Minn. 186, 201, 134 N. W. (2d) 115, 125; State v. Elli, 267 Minn. 185, 188, 125 N. W. (2d) 738, 740. Dean Wigmore concludes that the general exclusionary rule was first applied after the year 1680 and calls attention to Harrison's Trial, 12 How. St. Tr. 833, 864 (1692), where in a prose-

In an early case dealing with the problem, we held that evidence of distinct and independent prior offenses was not admissible because it tried defendant for charges of which he had no notice and for which he was unprepared and which prejudiced him in the eyes of the jury.[2] Subsequently, we enumerated various widely recognized exceptions to the general exclusionary rule where evidence of prior crimes was admissible to show motive, to negative mistake, to establish identity, or "where the previous offense is a part of a scheme or conspiracy incidental to or embraced in proof of the charge on trial."[3] Some 10 years later we specifically referred to sex crimes as a class of prosecutions where the exclusionary rule had been liberally extended, and admitted evidence of prior acts of carnal knowledge with the same victim "on the theory of disclosing the relationship between the parties, opportunity and inclination to commit the act complained of, and as corroborative of the specific charge."[4] Where the prior offense occurred with the same victim and was misconduct of the same or similar character, we stated that it gave rise to a strong inference the illicit relationship once created continued, and tended to characterize the conduct, inclination, and disposition of defendant toward the victim of the offense for which he was being prosecuted.[5]

While this court by way of dictum in a prosecution for bribery listed sex crimes[6] as a blanket exception to the exclusionary rule, our early

---

cution for murder evidence of prior felonious conduct was excluded with the court's observation (1 Wigmore, Evidence [3 ed.] § 194):

"Hold, hold, what are you doing now? Are you going to arraign his whole life? How can he defend himself from charges of which he has no notice? And how many issues are to be raised to perplex me and the jury? Away, away! That ought not to be; that is nothing to the matter."

[2] State v. Austin, 74 Minn. 463, 464, 77 N. W. 301, 302.

[3] State v. Fitchette, 88 Minn. 145, 148, 92 N. W. 527, 528.

[4] State v. Schueller, 120 Minn. 26, 29, 138 N. W. 937, 938.

[5] State v. Wallen, 123 Minn. 128, 129, 143 N. W. 119; State v. Roby, 128 Minn. 187, 189, 150 N. W. 793, 794; State v. Elijah, 206 Minn. 619, 621, 289 N. W. 575, 577; State v. Hopfe, 249 Minn. 464, 473, 82 N. W. (2d) 681, 687.

[6] State v. Sweeney, 180 Minn. 450, 455, 231 N. W. 225, 227, 73 A. L. R. 380.

cases uniformly excluded such evidence where the previous offense involved a victim other than the subject of the prosecution in question [7] unless admissible under some other well-defined exception.

It was not until our decision in State v. DePauw, 246 Minn. 91, 74 N. W. (2d) 297, that we squarely passed on the admissibility of prior sex offenses involving third persons.[8] There the charge was indecent assault against a 9-year-old girl. The trial court received evidence that defendant was guilty of similar misconduct against four other children between the ages of 8 and 9 years. All of the offenses occurred in the defendant's home; the victims were all children living in the immediate neighborhood; and all were playmates of defendant's son. We held that the prior offenses and the offense charged constituted a common plan, scheme, or pattern which brought them within the exception to the exclusionary rule.[9] However, none of the prior victims was in any way related to defendant, and in each case the misconduct consisted of improperly fondling young children in the same manner as that charged in the principal proceedings. More recently, in State v. Arradondo, 260 Minn. 512, 110 N. W. (2d) 469, we held it proper in a carnal knowledge

---

[7] State v. Rutledge, 142 Minn. 117, 118, 171 N. W. 275, 276 (dictum); State v. Friend, 151 Minn. 138, 139, 186 N. W. 241; State v. Haney, 219 Minn. 518, 18 N. W. (2d) 315.

[8] In State v. Shtemme, 133 Minn. 184, 158 N. W. 48, a sex offense with a third person was found admissible only because it occurred in the physical presence of the victim of the carnal knowledge for which the prosecution was brought.

[9] Initially, the common scheme or plan exception was intended primarily to cover such cases as larceny, embezzlement, forgery, and swindling. As a prerequisite it was necessary that some connection between the crimes "be shown to have existed in fact and in the mind of the defendant, uniting them for the accomplishment of a common purpose." There had to be such a relation between the offenses that they were part of one transaction. State v. Sweeney, 180 Minn. 450, 455, 231 N. W. 225, 227, 73 A. L. R. 380; State v. Thompson, 241 Minn. 59, 67, 62 N. W. (2d) 512, 519; State v. Wofford, 262 Minn. 112, 118, 114 N. W. (2d) 267, 271; State v. Stuart, 203 Minn. 301, 306, 281 N. W. 299, 302; State v. Yurkiewicz, 212 Minn. 208, 210, 3 N. W. (2d) 775, 776; People v. Molineux, 168 N. Y. 264, 305, 61 N. E. 286, 299, 62 L. R. A. 193.

prosecution under the rule we adopted in the DePauw case to receive evidence that defendant had committed similar offenses against two other 16-year-old girls.

Unlike the DePauw and Arradondo cases, the prior misconduct here was of a somewhat different character from that with which defendant is now charged. However, both offenses involved sexually molesting small children, and we believe the similarity of behavior is sufficient to justify receiving the challenged evidence at the new trial.

A basic assumption implicit in decisions which permit a showing of prior sex offenses is that sex offenders have an established proclivity for recidivism.[10] Nevertheless, courts have consistently refused to permit such evidence to show defendant's general propensity for crime although the distinction between inclination and disposition has been difficult to articulate in determining whether a common scheme or plan has been proved.[11] In permitting evidence of prior offenses to be received as a part of a common plan or scheme, we have come perilously close to putting the defendant's character and record in issue notwithstanding his failure to take the witness stand, as in the instant case.

Where a defendant is charged with a particular offense, it has been argued that he should be prepared to defend against evidence of similar crimes involving the same victim.[12] However unfair the result may be to an innocent defendant, where he has no notice of other charges it is even more unjust to confront him with evidence of equally repulsive and out-

---

[10] This assumption has been seriously challenged as a result of a number of studies. Commonwealth v. Boulden, 179 Pa. Super. 328, 342, 116 A. (2d) 867, 873, note 2; Gregg, *Other Acts of Sexual Misbehavior and Perversion as Evidence in Prosecutions for Sexual Offenses*, 6 Ariz. L. Rev. 212, 231; Trautman, *Logical or Legal Relevancy—A Conflict in Theory*, 5 Vanderbilt L. Rev. 385, 406, note 83. A contrary opinion is expressed in Note, 40 Minn. L. Rev. 694, 702, note 64.

[11] City of St. Paul v. Greene, 238 Minn. 202, 206, 56 N. W. (2d) 423, 426, 40 A. L. R. (2d) 812; State v. DePauw, 246 Minn. 91, 95, 74 N. W. (2d) 297, 300; Note, 37 Minn. L. Rev. 608, 614; Annotation, 77 A. L. R. (2d) 841, 847.

[12] It has been suggested that such information may be elicited by defendant at the preliminary hearing. People v. Mooney, 363 Mich. 454, 457, 109 N. W. (2d) 845, 847.

rageous misconduct against third persons. We are not inclined to aggravate a situation which we already regard as potentially oppressive without promulgating appropriate safeguards.

A well-considered article on the admissibility of testimony of prior victims points out: [18]

"* * * At least it can be said that if the prosecuting witnesses did not know each other prior to trial; if their stories were recorded prior to communication between them; if they were subjected to thorough cross-examination and their stories stood up; then such evidence would be quite relevant and its relevancy would tend to increase with the number of witnesses who could testify to the *modus operandi*."

In other words, the opportunity for collusion and the probability of fabrication are less likely where unrelated, mature victims voluntarily come forward to testify to a defendant's previous sexual misconduct. The natural reluctance of such persons to disclose their identity entitles their testimony to considerable weight. In the instant case, on the other hand, all three of the alleged victims were small children, 10 and 11 years of age. They were brother and sisters, stepchildren of the defendant, living in the same household with their mother. Clearly, the opportunity for suggestion and for influencing their testimony was great. Under these circumstances, the court must exercise extreme caution in receiving such evidence and ordinarily should advise the jury of the limited purpose for which it is received. This danger of fabrication was not present in either the DePauw or Arradondo cases.

While, of course, failure to complain is not conclusively impeaching, the fact remains that in the instant case, so far as the record indicates, two of the children who claim to have been victims of repeated and shocking misconduct over an extended period of time made no complaint to their mother nor to anyone else until after the offense for which defendant is here charged, and the third child made no complaint at any time. This is something we cannot ignore in weighing the question of whether defendant should have a new trial.

---

[18] Gregg, *Other Acts of Sexual Misbehavior and Perversion as Evidence in Prosecutions for Sexual Offenses*, 6 Ariz. L. Rev. 212, 231.

■   Threaded through our precedents dealing with exceptions to the exclusionary rule is a note of concern, admonishing courts against depriving innocent persons of their constitutional right to a fair trial.

"\* \* \* [I]t is not the rights of those alone who may be guilty of other offenses for whom the solicitude of the law is to be exercised, but it is more particularly for the innocent, oppressed with unfounded suspicions, who may find no other shield for his protection than an intelligent enforcement of his constitutional safeguards by the courts." [14]

Where it is not clear to the court whether or not the evidence is admissible as an exception to the general exclusionary rule, "the accused is to be given the benefit of the doubt, and the evidence rejected." [15] We have said, "The danger of it is that a jury may convict because, though guilt of the crime charged is not proved, it is satisfied to convict because of other crimes," [16] and again:

"It is sometimes a close question whether the probative value of such evidence is outweighed by the risk that its admission will necessitate undue consumption of time, confuse the issues, surprise the defendant, or mislead and unduly prejudice the jury \* \* \*." [17]

We have noted:

"In the adjudication of sexual offenses, particular caution must be exercised lest the law in pursuing the guilty deprive the innocent of their rightful protection." [18]

Dean Wigmore has stated the problem succinctly in terms we have expressly approved [19] (1 Wigmore, Evidence [3 ed.] §§ 193, 194):

"\* \* \* That such former misconduct is relevant, *i. e.* has probative value to persuade us of the general trait or disposition, cannot be doubted.

---

[14] State v. Fitchette, 88 Minn. 145, 149, 92 N. W. 527, 529.

[15] Id. 88 Minn. 149, 92 N. W. 528.

[16] State v. Doty, 167 Minn. 164, 166, 208 N. W. 760, 761.

[17] State v. Gavle, 234 Minn. 186, 208, 48 N. W. (2d) 44, 56.

[18] Luley v. Luley, 234 Minn. 324, 327, 48 N. W. (2d) 328, 329.

[19] State v. Nelson, 148 Minn. 285, 298, 181 N. W. 850, 855; State v. Friend, 151 Minn. 138, 140, 186 N. W. 241, 242; State v. Gress, 250 Minn. 337, 342, 84 N. W. (2d) 616, 621.

The assumption of its probative value is made throughout the judicial opinions on this subject * * *."

"It may almost be said that it is because of this indubitable relevancy of such evidence that it is excluded. It is objectionable, not because it has no appreciable probative value, but because it has too much. The natural and inevitable tendency of the tribunal—whether judge or jury—is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge. Moreover, the use of alleged particular acts ranging over the entire period of the defendant's life makes it impossible for him to be prepared to refute the charge, any or all of which may be mere fabrications. * * *

* * * * *

"The reasons thus marshalled in various forms are reducible to three: (1) The over-strong tendency to believe the defendant guilty of the charge merely because he is a likely person to do such acts; (2) The tendency to condemn, not because he is believed guilty of the present charge, but because he has escaped unpunished from other offences; * * * (3) The injustice of attacking one necessarily unprepared to demonstrate that the attacking evidence is fabricated * * *."

■ Although the responsibility for weighing the delicately balanced and conflicting considerations involved in receiving prior related misconduct is largely within the discretion of the trial court, we conclude that we have gone as far as we think proper in approving its admissibility. Because of the serious misgivings we have long entertained in this connection,[20] we now hold that in the trial of this and future criminal cases where the state seeks to prove that an accused has been guilty of ad-

---

[20] In State v. Jensen, 70 Ore. 156, 158, 140 P. 740, 741, the Oregon court has stated: "To allow such testimony is to infringe the constitutional right of the defendant to demand the nature and cause of the accusation against him. Such procedure might be palliated if there was any provision for giving the defendant notice of the other charges in such cases; but it is utterly repugnant to justice and fair play to accuse a person of a stated crime and make that the excuse for what is really trying him for a number of others by springing them

ditional crimes and misconduct on other occasions, although such evidence is otherwise admissible under some exception to the general exclusionary rule, it shall not hereafter be received unless within a reasonable time before trial the state furnishes defendant in writing a statement of the offenses it intends to show he has committed, described with the particularity required of an indictment or information, subject, however, to the following exceptions: (a) Offenses which are part of the immediate episode for which defendant is being tried; (b) offenses for which defendant has previously been prosecuted; and (c) offenses which are introduced to rebut defendant's evidence of good character.

■  Since there is to be a new trial, it is not necessary to consider assignments of error thereby rendered moot.

Reversed and new trial ordered.

---

unheralded upon the attention of the jury to produce a verdict of guilty which might not result except for the bias thus imparted to the minds of the jurors * * *."