## STATE v. RAY ANTHONY WILLIAMS.

239 N. W. 2d 222.

February 6, 1976—No. 45158.

*C. Paul Jones,* State Public Defender, and *Mark W. Peterson,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *Gary W. Flakne,* County Attorney, and *Vernon E. Bergstrom, Michael McGlennen,* and *David W. Larson,* Assistant County Attorneys, for respondent.

Heard before Otis, Scott, and Amdahl, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

Defendant appeals from a conviction for aggravated robbery under Minn. St. 609.245.[1] Defendant was tried by a jury before

---

[1] Minn. St. 609.245 provides: "Whoever, while committing a robbery, is armed with a dangerous weapon or inflicts bodily harm upon another is guilty of aggravated robbery and may be sentenced to imprisonment for not more than 20 years or to payment of a fine of not more than $20,000, or both."

the Hennepin County District Court and a verdict of guilty was returned.

At 8 a. m. on August 13, 1973, Wayne Cook arrived at his store, Fair Oaks Mini-Market, located at 2428 Clinton Avenue South, Minneapolis. Shortly thereafter, Joseph Sherman, the former owner and a part-time employee, arrived. He was followed a few minutes later by Andrea DeJarlais, an 11-year-old girl who worked occasionally in the store. Mr. Cook opened his store to the public at 8:45 a.m.

At 9 a. m. a man entered the store and picked up a carton of eggs. After asking Mr. Cook about their price, the man placed the eggs on the checkout counter and pulled a gun out from under his jacket. The man remained silent and Mr. Cook asked, "I suppose you want the money?" The man said, "Yes." Mr. Cook removed $36 from the cash register and gave it to him. Removing the last bill activated an automatic camera located above the counter. The man asked Mr. Cook if there was any more money and was told that there was not. The man heard the camera clicking and asked what the noise was. Mr. Cook first replied that he did not hear anything, and then told the man that it was a camera and silent alarm. The man went to the camera, started pulling on the wires, and asked Mr. Cook, "Does that mean the police are coming?" Mr. Cook replied, "Yes."

Mr. Sherman, who had been standing in the background, ran out of the store. The robber yelled that he was going to kill Mr. Sherman and ran out after him. As the man ran out the door, Mr. Cook reached under the counter to grab a pistol. The robber fired three shots at Mr. Cook. Mr. Cook got up and chased the man outside the door. As he got outside, Mr. Cook fired one shot at the robber and the latter fired two shots at him. During the interchange of shots, the man lost his hat on the sidewalk. After the robber had fled out of range, Mr. Cook went back into the store and called the police.

On October 23, 1973, defendant was identified by Mr. Cook, although not by Mr. Sherman, at a police lineup. During the line-

up each of the individuals appearing was requested to put on the hat which had been dropped by the robber fleeing the scene. During the trial, the prosecutor requested that defendant put on the hat in front of the jury. Defendant refused. After some discussion in chambers, with defendant present, the court ordered defendant to put on the hat. Defendant again refused. The court held defendant in contempt. In the presence of the jury, the court said:

"Ladies and gentlemen, the record may show that for purposes of this trial, insofar as you are concerned, that the defendant has declined to put on the hat. As far as the legal implications of that are concerned, that is my problem. It was taken up in chambers and need not concern you. The declination to put on the hat is part of the record, for whatever consideration you wish to give it."

During the state's case, the county attorney advised the court that he intended to introduce evidence of a separate crime under the identity exception to the Spreigl rule. The defense objected. The court ruled that this evidence was admissible to establish identity. The state called Gary Herstein, who testified that he was employed at Tie One On, a shoe store in 11 North Seventh Street, Minneapolis. Mr. Herstein was working at the store on August 21, 1973, 8 days after the alleged crime, when the store was robbed by two men. One of the men pointed a gun at him and told him to lie on the floor, and he was tied up. Eight pairs of shoes and $10 or $12 were taken. Herstein identified defendant as the gunman. The court then instructed the jury that the testimony about another offense was proper but that the jury should give it weight only in so far as it established the identity of defendant in committing the charged crime.

The sole witness for the defense was Larry Thomas, who testified that early on the morning of the alleged crime he, along with defendant and another friend, Sam Berry, left Minneapolis to travel first to Chicago and then to Detroit. He stated that the

three of them had spent one week in Detroit and returned together.

The issues presented are as follows:

(1) Was defendant denied a fair trial by the admission of evidence of an offense other than that for which he was on trial?

(2) Did the trial court err in ordering defendant to put on the hat found at the scene of the robbery and in commenting to the jury that defendant had refused to do so?

(3) Was there sufficient evidence to sustain the verdict?

■ It is well established that evidence of unrelated crimes may not be introduced against the accused unless it comes under one of the recognized exceptions. State v. Spreigl, 272 Minn. 488, 139 N. W. 2d 167 (1965). The purpose of this rule is to prevent the judge or jury from giving too much weight to other crimes by defendant and convicting him irrespective of his guilt for the crime charged. 1 Wigmore, Evidence (3 ed.) § 194. There are several exceptions to this rule, however. One exception is made when the identity of the malefactor is at issue.[2] State v. Billstrom, 276 Minn. 174, 149 N. W. 2d 281 (1967) ; State v. Bowser, 305 Minn. 431, 234 N. W. 2d 890 (1975).

Defendant contends that the evidence of his involvement in another armed robbery 8 days later is too remote in time and manner of commission to be admissible under the identity exception. While the manner of the shoe store robbery differed in some respects from the grocery store incident, they were both armed robberies, and the fact that defendant was identified as one of the participants in a second armed robbery in Minneapolis only 8 days later is closely related to the alleged crime.

The determination of whether other independent criminal acts

---

[2] Evidence of other crimes also may be admitted to establish motive, intent, absence of mistake, sexual proclivity, or common scheme or plan. State v. Spreigl, 272 Minn. 488, 491, 139 N. W. 2d 167, 169 (1965); State v. Fitchette, 88 Minn. 145, 148, 92 N. W. 527, 528 (1902); State v. Schueller, 120 Minn. 26, 29, 138 N. W. 937, 938 (1912); State v. DePauw, 246 Minn. 91, 74 N. W. 2d 297 (1955).

are so closely connected with the crime as to be admissible is a matter resting largely within the discretion of the trial court. There will be no reversal unless there is a clear abuse of discretion. State v. Sorenson, 270 Minn. 186, 201, 134 N. W. 2d 115, 126 (1965).

Defendant argues that evidence of other offenses may be introduced only where the identity of the accused is "not definitely connected" with the offense for which he is on trial. Here, however, the identity of the robber had not been established. Defendant's alibi was that he was out of town. One of the witnesses to the robbery had failed to identify defendant at a police lineup. Defendant denied that the pictures taken by the camera during the holdup were photographs of him. The trial court said:

"It's clear to me that we have many photos in this case, and it is also clear to me that the defendant is not admitting he is the one in the key photo. Under the circumstances, I don't know how I can hold identification as so strong that similar testimony shouldn't go in. I am going to overrule your objection, subject to listening to the witness testify."

All of the safeguards set forth in State v. Billstrom, *supra,* were met in this case.[3] It does not appear that the introduction

---

[3] State v. Billstrom, 276 Minn. 174, 178, 149 N. W. 2d 281, 284 (1967), stated:

"(a)  Evidence of other crimes may not be received unless there has been notice as required by State v. Spreigl, 272 Minn. 488, 496, 139 N. W. (2d) 167, 173. * * *

"(b)  At the time the evidence is offered, the prosecutor shall specify the exception to the general exclusionary rule under which it is admissible.

"(c)  If evidence of other crimes is received for purposes of identity rather than to show a common scheme or plan, there must nevertheless be some relationship in time, location, or modus operandi between the crime charged and the other offenses.

"(d)  Evidence of other crimes is admissible only if the trial court finds the direct or circumstantial evidence of defendant's identity is otherwise weak or inadequate, and that it is necessary to support the

of evidence of a separate armed robbery 8 days later by defendant was merely cumulative or a subterfuge for attacking defendant's character.

■ Defendant's assertion that his Fifth Amendment privilege against self-incrimination was violated when he was ordered by the court to put on a hat found at the scene of the crime must be considered in the light of a line of United States Supreme Court decisions which distinguishes between compelling testimony and compelling physical evidence. Holt v. United States, 218 U. S. 245, 31 S. Ct. 2, 54 L. ed. 1021 (1910) ; Schmerber v. California, 384 U. S. 757, 86 S. Ct. 1826, 16 L. ed. 2d 908 (1966) ; United States v. Wade, 388 U. S. 218, 87 S. Ct. 1926, 18 L. ed. 2d 1149 (1967) ; Gilbert v. California, 388 U. S. 263, 87 S. Ct. 1951, 18 L. ed. 2d 1178 (1967). See, also, Rule 9.02, subd. 2, Rules of Criminal Procedure, effective July 1, 1975.

Defendant attempts to distinguish these cases on the ground that they involve pretrial physical acts, testified to by witnesses other than the accused. Both this court and a Federal court have rejected this distinction. In State v. Trueman, 303 Minn. 426, 227 N. W. 2d 824 (1975), this court affirmed the action of a trial court which required defendant, in the presence of the jury, to put on a ski mask similar to the one worn by the robber. In United States v. Turner, 472 F. 2d 958 (4 Cir. 1973), the United States Court of Appeals for the Fourth Circuit held that requir-

state's burden of proof. It should be excluded where it is merely cumulative and a subterfuge for impugning defendant's character or for indicating to the jury that he is a proper candidate for punishment.

"(e) The evidence of defendant's participation in other crimes need not be proved beyond a reasonable doubt but must be clear and convincing.

"(f) Both at the time the evidence is received and in the final charge, the court should admonish the jury that the testimony is received for the limited purpose of establishing identity. It is the court's duty to advise the jury in unequivocal language that defendant is not being tried and may not be convicted for any offense except that charged, warning them that to convict for other offenses may result in unjust double punishment."

ing a defendant to put on a wig and sunglasses similar to those used in the robbery to allow the jury to compare his appearance with a photograph taken at the robbery did not violate his constitutional right against self-incrimination.

Defendant cites Allen v. State, 183 Md. 603, 39 A. 2d 820 (1944), as authority for the proposition that the accused cannot be compelled in court to perform an act which would aid in connecting him with the crime. The Court of Appeals of Maryland in a later case, Doye v. State, 16 Md. App. 511, 522, 299 A. 2d 117, 122 (1973), distinguished the Allen case, where the defendant was compelled to display his forearm to the jury, and noted:

"* * * The Court in *Allen* was particularly careful in expressing the limitations of its holding, saying at 612-613 [39 A. 2d 824]: 'It is to be borne in mind that the particular purpose in seeking to have the accused try on the hat was *not to aid in identifying him* by showing how he looked with it on or off, as in the case of *People v. Pecho,* 362 Ill. 568, 200 N. E. 860, where the compelled wearing of a hat was approved as an aid to identification, but was for the sole purpose of attempting to prove his ownership of this incriminating article.' "

In the instant case the purpose of requiring defendant to wear the hat was to allow the jury to compare his appearance with a photograph. Such a requirement is no more an infringement of defendant's rights than allowing the jury to see defendant and compare his features with those in a photograph. See, Holt v. United States, *supra.*

In Schmerber v. California, 384 U. S. 757, 763, 86 S. Ct. 1826, 1832, 16 L. ed. 2d 908, 916 (1966), the Supreme Court upheld a conviction of driving while intoxicated where results of a blood test taken over the defendant's objection were introduced at trial. The court stated:

"It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications

* * *. On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but the compulsion which makes a suspect or accused the source of 'real physical evidence' does not violate it."

Defendant's refusal to put on the hat was made a matter of record and brought to the attention of the jury at the time of his refusal. The trial judge's comments only informed the jury that they could give defendant's refusal whatever consideration they wished.

■ Defendant's contention that the evidence is not sufficient to support his conviction is without merit. This court frequently has ruled that the identification by a single eyewitness is sufficient to sustain a conviction. State v. Richmond, 298 Minn. 561, 214 N. W. 2d 694 (1974); Hamilton v. State, 293 Minn. 257, 198 N. W. 2d 271 (1972); State v. Burch, 284 Minn. 300, 170 N. W. 2d 543 (1969).

The store owner in this case identified defendant at the lineup, in the courtroom, and from photographs taken during the robbery. The testimony of Gary Herstein supported that of Mr. Cook regarding defendant's identity. If a jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, reasonably concludes that defendant was proved guilty, its verdict will not be disturbed on appeal. State v. Thompson, 273 Minn. 1, 139 N. W. 2d 490, certiorari denied, 385 U. S. 817, 87 S. Ct. 39, 17 L. ed. 2d 56 (1966).

Affirmed.