STATE of Minnesota, Respondent,

v.

Norbert P. HAALA, Appellant.

No. C5-87-227.

Court of Appeals of Minnesota.

Nov. 10, 1987.
Review Denied Dec. 22, 1987.

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Spec. Asst. Atty. Gen., St. Paul, James R. Olson, Brown Co. Atty., New Ulm, for respondent.

C. Paul Jones, Minnesota Public Defender, Susan K. Maki, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by RANDALL, P.J., and CRIPPEN and MULALLY,* JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

Appellant Norbert Haala was convicted of criminal sexual conduct in the second degree in violation of Minn.Stat. § 609.343(a) (1986). On appeal, appellant claims his conviction should be reversed or he should be granted a new trial because: (1) the trial court erred by admitting *Spreigl* evidence of his 1981 conviction for criminal sexual conduct in the second degree and giving an improper cautionary instruction on the purpose of the evidence; (2) the prosecutor committed misconduct; and (3) there is insufficient evidence to sustain the conviction. We affirm.

* Acting as judge of the Court of Appeals by ap-

## FACTS

Appellant was convicted of sexual misconduct, touching with his hand his ten-year-old daughter L.H. Appellant's defense to the charge was fabrication.

Appellant and Karen Haala were divorced following appellant's conviction in 1981 for sexually abusing his step-daughter, K.E. After the divorce, Karen Haala and the parties' four children, Tony, Andy, Leina, and the victim, L.H., age 10, lived with their mother at the parties' farm in Comfrey, Minnesota. Appellant maintained visitation rights with the children on Sundays and pursuant to the divorce decree, rented three buildings on the farm, one of which he converted from a chicken house into a wood shop. He regularly worked at the wood shop an average of four evenings a week. The two boys, especially Tony, helped appellant make wooden toys at the shop. On occasion the two girls also visited the woodshop.

On July 6, 1985, Karen Haala and her two daughters, Leina and L.H., together with Dorothy Severin, went to visit Shirley Stippel, a good friend and former sister-in-law in Mankato. Stippel asked Karen Haala about the childrens' visitation with appellant, and she replied that Leina and L.H. didn't want to go with appellant on visitation. Stippel asked L.H. if she knew where her private parts were and L.H. responded by putting her hand down by her crotch. Stippel then asked L.H. if anybody had touched her there. L.H. stuck her thumb in her mouth and walked away, as if afraid to say anything.

L.H. then came back and sat down. Stippel told her she didn't have to be afraid and stated that nobody was going to hurt her. Stippel again asked if anyone had touched her and L.H. said yes, her father had. Stippel asked where, and L.H. put her hand down by her crotch. Stippel asked where this happened, and L.H. told her it was in the chicken house where they make toys. She also stated she did not want to go with her father on visitation.

pointment pursuant to Minn. Const. art. 6, § 2.

In answering Stippel's question, L.H. was very nervous, as if she didn't want to answer any questions. During this conversation, Karen Haala sat quietly. There had been no earlier discussion between Stippel and Haala of possible sexual abuse.

Stippel advised Karen Haala she should report the incident to her social worker, who was coming on Monday. Although upset about L.H.'s revelation, Karen Haala allowed L.H. to go with the other children on the scheduled visitation day with appellant the next day, on Sunday, rather than violate the divorce decree. When the social worker, Deb Steinkey, came to the Haala farm she interviewed L.H., who again related the incident.

L.H. testified that the incident occurred in the wood shop a few days earlier, when no one else was present. She stated that when she was sitting on appellant's lap he put his hand down under her jeans and underwear and touched her in the genital area. On cross-examination, L.H. testified that she went to the wood shop by herself and was with appellant for a period of time before the touching occurred. In response to leading questions, she agreed that they had been together perhaps 15, or even 30 minutes to an hour. Following the incident she ran out, went into the house, and watched television.

On direct examination L.H. stated that appellant told her not to tell her mother what had happened. Later, however, she stated she didn't remember appellant saying anything to her, and it was difficult to remember. She gave conflicting testimony as to whether her brother Andy had come into the wood shop while the touching was taking place. Andy Haala testified he did not walk in on appellant and L.H. while they were alone in the shop. L.H. also testified that her mother had told her to tell the truth, that she was telling the truth, and had not made up the incident.

Appellant denied having touched L.H.'s private parts and indicated that in the days preceding the fourth of July he was at the wood shop two or three times, but only saw the children there once on July 2. He stated that on July 2 he brought a rocking horse for him and Tony to use as a model and then he was alone in the workshop for 15 or 20 minutes before Tony came in. Tony and appellant worked for the next hour or two making a pattern for the rocking horse and worked on other toys as well. Appellant claimed the other three children came in about 20 or 30 minutes after Tony did, and later, Tony left for a short time to go to the bathroom. Appellant stated that after he returned Tony and L.H. got into a fight, during which L.H. called Tony an obscenity and appellant made them say a prayer. According to appellant, L.H. then left and went to the house, and appellant finished up his work and left.

Appellant also testified that he was aware of his past problems and took special precautions when he was with any of the girls. He testified "I always was aware of myself because I was involved in '81. I didn't want to get involved with the same thing, so I took the necessary steps I felt that would prevent me from doing the things I did in '81."

Tony Haala was called as a witness by the defense. He testified that around July 4, 1985 appellant came to the farm with a rocking horse, and later that same evening Tony and L.H. got into an argument at the shop and called him a bad name. Tony stated appellant made them say a prayer, and L.H. left. Tony indicated it was difficult to remember which night that occurred, and stated it could have been either before or after July 4. He testified that appellant left the wood shop for about a half an hour and that Tony went into the house until after appellant returned. Tony also testified that he was not always around when appellant was at the work shop, and sometimes when Tony got home, appellant was in the shop with Andy or L.H. alone. Tony also testified that L.H. had not lied to him very often and was not a liar.

Dorothy Severin was also called as a witness by the defense. She testified that when she, Karen Haala, and the two Haala girls were visiting Shirley Stippel on July 6, Stippel asked L.H., "Did your father touch you?" According to Severin, L.H. first

made no response, and when asked again she only nodded her head. Severin also stated she did not see L.H. touch herself between the legs in response to any questions by Stippel. However, in a statement to the police, Severin stated she had learned L.H. had been touched between the legs by appellant.

Nancy Hierman, whose friendship with Karen Haala had soured, testified that sometime before their friendship broke off in 1985, Haala said she was going to do something to make sure appellant never saw the children again. Karen Haala was also called as a witness by the defense. She could not recall ever making such a statement, and testified that she never told L.H. to make up a story in order to prevent further visitation. Karen Haala did, however, state that it was possible that she had falsely informed a social worker that appellant had told L.H. not to tell anyone what had happened. Karen Haala also related several instances of harassment by appellant following the divorce, as well as nonpayment of child support and unauthorized visits with the children. These instances, coupled with her concern over appellant's problem with young girls, led her to prefer that he have no visitation with L.H. and Leina. Following the divorce, Karen Haala had returned to the court three times seeking restrictions on appellant's visitation rights, but she never sought a termination of visitation.

The prosecutor was allowed to introduce evidence concerning appellant's 1981 conviction for criminal sexual conduct in the second degree involving sexual contact with his minor stepdaughter, K.E., which occurred over a period of two years. The prosecutor was allowed to read to the jury the probable cause portion of the complaint which had been filed against appellant for that offense. At the omnibus hearing, appellant opposed introduction of any evidence concerning his 1981 conviction as unduly prejudicial and irrelevant, in light of his rehabilitation. The motion was denied. Appellant, however, did not object to the form of reading to the jury the probable cause portion of the complaint. At least one instance of sexual contact with his step-daughter, K.E., occurred in an outbuilding at the farm and he had told his step-daughter not to tell anyone about the sexual abuse.

Over appellant's strenuous objection, the court permitted the prosecutor to cross-examine appellant about the 1981 offense and attempt to link it with the present charge. He asked appellant if he had a problem, which appellant denied. The prosecutor continued:

Q. You get sexual urges for little girls?

A. No, I don't, Mr. Tuttle.

Q. Didn't you recognize that problem back in 1981?

A. That was in 1981.

Q. When was it, 1982?

A. No.

Q. Didn't you go to an incest seminar so you could get help?

A. Yes.

Q. And isn't it true, Mr. Haala, that you started your sexual abuse of [K.E.] the same way your daughter testified yesterday about what happened to her?

A. No, I did not.

Later in the cross-examination the prosecutor returned to that line of questioning:

Q. Mr. Haala, you told the jury on direct examination that you took precautions so that it wouldn't happen again, isn't that correct?

A. Yes.

Q. You were concerned that it might happen again, weren't you, Mr. Haala?

A. If you don't, it can happen to anyone.

Q. Isn't it true, Mr. Haala, that those urges that you get you cannot control?

MR. LOWTHER: Objection, beyond the scope, calling for an expert conclusion from a witness who is clearly not.

THE COURT: OVERRULED.

Q. (By Mr. Tuttle, continuing) Isn't that true?

A. You are going to have to repeat the question.

Q. Isn't it true that those urges you get for a young girl you can't control?

A. That was back in '81.

In his closing statement, the prosecutor referred to the defendant's "problem:"

What I am here to suggest, though, is that the State has proved beyond a reasonable doubt that Mr. Haala has a horrendous and terrible problem. You can't understand it. We can't comprehend it. We cannot imagine why a man of fifty-seven would find it sexually pleasurable to touch a ten year old girl. We can't condone it. How do we know he's got the problem? Because I just told you that I am submitting to you that we proved that beyond reasonable doubt; and this is where we get into that other crime. We know that he admitted to violating [K.E.], pled guilty to it.

Later in the closing statement, the prosecutor reminded the jury that the court would instruct them how to use the evidence of the prior offense. He continued:

I don't disagree with the rule of law that says you should not convict him because he violated the law previously. If that's the only piece of evidence we got, you go in there and you vote not guilty, and you come back out. But, you can use it. You've heard this on t.v.: modis operandi. Big words for "just like before", "same thing", "similar." That's one of the purposes of introducing that.

Certainly it wouldn't be true if he was convicted of burglary, convicted of damage to property, but he wasn't convicted of that stuff. He was convicted of the very same offense with a step-daughter, and he had her in a shed, and he had [L.H.] in a shed; and you can use that with the testimony of [L.H.].

The trial court cautioned the jury as to the use of the *Spreigl* other crime evidence. He instructed the jury:

The proper use and purpose of the evidence of that prior conviction is somewhat limited. You can't convict the Defendant of the offense with which he is charged today simply because he was convicted of the prior offense in 1981, because the one does not automatically imply the other.

But, if there is evidence of the offense for which he is being tried now, you may consider that on a prior occasion something claimed to be similar occurred in connection with inquiry as to whether there is a common pattern of the way in which it happened *or whether it indicates he had a capacity or a propensity to commit the act charged,* and you may take that into consideration with all the other evidence you are hearing today about what happened in 1985 in your decision of whether or not the State has proved its case.

Later during final instructions, the judge repeated the essence of the instructions:

I instructed you during trial that the evidence was received for the limited purpose of assisting you to determine if defendant committed the offense for which he is on trial here.

\* \* \* \* \* \*

If you conclude that the prior conduct has been clearly and convincingly shown, *you can then consider whether it shows that the defendant has a propensity or capacity to commit the offense the State claims he committed in 1985* or whether the circumstances and details of the 1981 offense suggest a pattern of behavior that the defendant repeated in 1985.

Now the defendant is not being tried for, and may not be convicted for, any other offense than the 1985 conduct charged before you in this trial. You are specifically instructed that you may not convict defendant of the crime charged here solely because of the 1981 conduct. That would be an injustice. But, you may consider the evidence as to 1981 together with all the other evidence the State has placed before you as you decide whether the State has proved the defendant committed the 1985 offense at trial.

Appellant was convicted of criminal sexual conduct in the second degree and sentenced to 36 months imprisonment.

## ISSUES

1. Did the trial court err in allowing the state to introduce *Spreigl* evidence con-

cerning appellant's 1981 conviction for criminal sexual conduct in the second degree, or in its cautionary instruction on the proper use of the evidence?

2. Did appellant forfeit his right to obtain review of the prosecutor's alleged misconduct?

3. Is the evidence sufficient to support the conviction?

## ANALYSIS

### I.

Appellant claims he was denied his constitutional right to a fair trial because (1) the trial court allowed the state to introduce *Spreigl* evidence concerning his 1981 conviction for criminal sexual conduct in the second degree of his step-daughter, and (2) certain of the prosecutor's questions during cross-examination and statements during closing argument, as well as jury instructions given by the trial court suggested the jury could use the prior conviction as evidence of appellant's general propensity or inclination to commit the present crime.

■ 1. Appellant asserts that his 1981 conviction was irrelevant because of his successful treatment and rehabilitation and that the evidence was unduly prejudicial. The trial court's admission of other crime evidence will not be reversed, unless it was a clear abuse of discretion. *State v. Doughman,* 384· N.W.2d 450, 454 (Minn. 1986). However, the evidence must be relevant and its probative value must outweigh any potential for unfair prejudice. *Id.;* Minn.R.Evid. 403.

■ Other crime evidence may be admitted to establish motive, intent, sexual proclivity, or common scheme or plan. *See State v. Williams,* 307 Minn. 191, 194 n. 2, 239 N.W.2d 222, 224 n. 2 (1976). The 1981 conviction for criminal sexual conduct in the second degree tended to establish a common scheme or plan and was probative of intent. The admission of the 1981 conviction was not a clear abuse of discretion. *See State v. Spencer,* 366 N.W.2d 656, 660 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. July 11, 1985). There are similarities between the past and present offenses. Appellant was charged with assaulting his daughter, and the prior conviction related to the assault of his step-daughter. The assaults occurred when the daughters were near the same age, both involved touching the genital area. At least one instance involved in the past occurred in the outbuilding at the farm, as did this incident.

■ 2. Appellant claims that the prosecutor's statements and questions during trial and the jury instructions allowed the jury to misuse the evidence and convict him for the old offense. Appellant's first contention is that he was unfairly prejudiced by the prosecutor's cross-examination about his ability to control his sexual behavior and the similarities between his past actions and present conduct.

The state contends that its line of questioning was permissible because appellant put his character into issue by testifying that he had had sexual urges for young girls, but had turned to therapy and religion to help him overcome them and now took specific precautions to prevent other misconduct from occurring. We disagree. This justification is spurious because appellant's problems would not have been at issue unless the state had put the *Spreigl* evidence before the jury. Appellant introduced the topic in response to the evidence of his prior conviction; this demonstrates the potency of *Spreigl* evidence. By responding to it, appellant did not leave the state free to base its prosecution on evidence of his propensity for misconduct.

However, assuming the issue was otherwise properly given to the jury with adequate limiting instructions, it was not prejudicial error to ask a few questions about similarities to the present charge and appellant's earlier problems controlling his behavior.

■ 3. Appellant did not object to the prosecutor's closing argument referring to appellant's propensity or disposition. Generally, a defendant failing to object is deemed to have waived his right to raise the issue on appeal. *State v. Parker,* 353 N.W.2d 122, 127 (Minn.1984). To review

such a case we must look for "plain error." *United States v. Segal,* 649 F.2d 599, 604 n. 10 (8th Cir.1981); Minn.R.Crim.P. 31.02. This court can reverse a conviction even when defendant failed to preserve the issue on appeal, if the prosecutor's statements are so prejudicial as to have changed the jury's result and thereby "affected substantial rights resulting in a miscarriage of justice." *Segal,* 649 F.2d at 604 n. 10 (citations omitted); *see also Parker,* 353 N.W. 2d at 127.

■ In the final argument, the prosecutor equated appellant's character with guilt of the present offense by arguing that the state had proved "beyond a reasonable doubt that Mr. Haala has a horrendous and terrible problem"—a propensity or disposition to abuse young girls. The prosecutor tempered this improper inference by also stating in the closing argument that the jury could not convict appellant because of the prior conviction alone, and that the prosecutor's arguments were not evidence. The one questionable statement was not so prejudicial as to be plain error such that we can disturb the trial court's decision.

4. Appellant also claims the court's cautionary instructions on the proper use of the other crime evidence were improper. The trial court instructed the jury that they could use the conviction and any inferences arising from it as to appellant's capacity or propensity to commit the present act, to help them reach a decision on the present charge. The jury could use the conviction in connection its inquiry as to "whether there is a common pattern of the way in which it happened or whether it indicates he had a capacity or propensity to commit the act charged," and the jury could "consider whether it shows that the defendant has a propensity or capacity to commit the offense the State claims he committed in 1985." [1] At trial, there were no objections by defendant to these instructions.

Appellant insists that the trial court erred in its reference to his character or propensity. The trial court said in its post-trial memorandum that on first glance such language of the instruction appears improper under *State v. Anderson,* 275 N.W. 2d 554 (Minn.1978). *Anderson* holds that evidence of prior offenses should not be used unless "not admitted for the purpose of suggesting to the jury that the Defendant should be convicted because he had a propensity to commit crimes." *Id.* at 555. The trial court said that "the reference in *Anderson* to 'crimes', plural, suggests generalized inclination to criminal acts as distinguished from propensity to commit the specific type of offense on trial. The former inclination relates to character while the latter relates to motive." Thus, the trial court held the evidence was permissible to show appellant's propensity or capacity to commit the specific offense of sexual abuse of a young girl.

Prior supreme court decisions leave room for the trial court's conclusion. Under Rule 404(b) evidence of other crimes is admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Minn.R.Evid. 404(b). The supreme court has recognized that evidence of prior sexual misconduct tends to show an inclination to commit the current sex offense, but that this fact does not preclude admitting the evidence. *City of St. Paul v. Greene,* 238 Minn. 202, 206, 56 N.W.2d 423, 426 (1952). Such evidence has the "effect, at least incidentally, of showing a general propensity or disposition to commit the type of crime involved, but it is only when its *sole* or *main* purpose is to show such propensity that it may be excluded on that ground." *Id.* (emphasis added).

The supreme court has established that the similarity of behavior between prior sex offenses and a current sex offense constitutes a "common plan, scheme, or pattern,"

---

**1.** The Criminal Jury Instruction guide in Minnesota suggests that in instructions for other crime evidence the judge tell the jury the evidence "was admitted for the limited purpose of assisting you in determining whether defendant committed the crime(s) with which he is charged."

10 Minnesota Practice, CRIM. JIG, 3.16 (1986); *see generally State v. Matteson,* 287 N.W.2d 408 (Minn.1979); *State v. Volstad,* 287 N.W.2d 660 (Minn.1980); *State v. Billstrom,* 276 Minn. 174, 149 N.W.2d 281 (1967).

bringing the prior offense within the exception to the general exclusionary rule. *State v. Spreigl,* 272 Minn. 488, 493, 139 N.W.2d 167, 170–71 (1965) (citing *State v. DePauw,* 246 Minn. 91, 74 N.W.2d 297 (1955)). Thus, prior similar acts with the same victim have been admissible "on the theory of disclosing the relationship between the parties, opportunity and inclination to commit the act complained of, and as corroborative of the specific charge." *Spreigl,* 272 Minn. at 491, 139 N.W.2d at 169 (citation omitted). In such a case, the prior offense gives rise "to a strong inference the illicit relationship once created continued," and tends "to characterize the conduct, inclination, and disposition of defendant toward the victim of the offense for which he was being prosecuted." *Id.* In this case the victims were not the same but very similar in age, sex, and relationship to appellant. Although Rule 404(b) does not specifically address inclination to commit sex crimes as an exception, we cannot ignore the *Spreigl* line of cases.

The supreme court appreciates the danger of prejudicial harm when prior misconduct is proven, as it was here, to show the defendant's propensity or inclination to commit a wrong, raising the possibility of convicting a defendant because of their bad character. *See Spreigl,* 272 Minn. at 493, 139 N.W.2d at 171. ("In permitting evidence of prior offenses to be received as part of a common plan or scheme, we have come perilously close to putting the defendant's character and record in issue.") We believe the trial court's reference to propensity and capacity wrongfully enlarges this danger. Again, however, the subject

is one where there was no objection by defendant at trial. Given the present state of Minnesota law, permitting evidence which shows in part a propensity to commit the act charged, we cannot say it was plain error for the trial court to comment on the relevance of appellant's capacity or propensity to commit a certain kind of crime.

The trial court appropriately cautioned the jury: "You are specifically instructed that you may not convict defendant of the crime charged here solely because of the 1981 conduct." [2] It would have been more reasonable if the trial court, having chosen to comment on the effect of *Spreigl* evidence to show a defendant's propensity, had also specifically instructed the jury in the cautionary part of the instruction that defendant cannot be convicted solely because of this propensity. Although the cautionary portion of the warning was inadequate, we do not find that the trial court's instruction constituted plain error compromising appellant's substantial rights.

Appellant contends that the prosecutor's questions in cross-examination and statements during closing argument, as well as the trial court's instructions to the jury, combined to deprive him of a fair trial and allowed the jury to convict him on the basis of his propensity to commit the crime, not on the basis of his actual guilt. As we have noted, the supreme court appreciates this risk to a defendant. *Spreigl,* 272 Minn. at 495, 139 N.W.2d at 170–71.

Under the present Minnesota law, two standards guide the courts in determining whether reversible error has occurred. Under Rule 403 and *Spreigl* it is reversible

---

2. Similarly, CRIM. JIG 3.16 instructs in its second paragraph that "[d]efendant is not being tried for and may not be convicted of any crime other than the crime charged * * *. You are instructed specifically that you are not to convict defendant on the basis of any [prior] occurrence. 10 Minnesota Practice CRIM. JIG, 3.16 (1986). To do so might result in unjust, double punishment." This paragraph, in combination with the first paragraph (evidence was admitted for the "purpose of assisting you in determining whether defendant committed the crime(s))" of the CRIM. JIG might be confusing to a jury because the instruction first suggests that the evidence may be used to determine guilt, and

then implies that it cannot be used as a basis for convicting the defendant. It would seem preferable to say, as the trial court did, that the other conviction may not serve as the *sole* basis for conviction. The trial court's instruction is consistent with the notion that the jury may not convict solely for prior misconduct, and it improves upon the CRIM. JIG by eliminating that potential confusion. The trial court's instruction conforms to the cautionary portion of 3.16. However, the permissive part of its instructions goes beyond 3.16, by introducing the notion of prior crime evidence as evidence of propensity to commit the current crime.

error to permit use of the evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Minn.R.Evid. 403; *see Spreigl*, 272 Minn. at 490, 139 N.W.2d at 169. Under *Greene*, the evidence is inadmissible if its "sole or main purpose" is to show a general propensity or disposition to commit the type of crime involved. *Greene*, 238 Minn. at 207, 56 N.W.2d at 426. Here, the use of the evidence did not fall under either prohibition. Appellant's propensity to sexually abuse young girls became a significant prejudicial part of the case against him, but we cannot say that it did so unfairly or that his propensity was the main thrust of the prosecution's evidence. The record does not show appellant was denied a fair trial.

## II.

Appellant claims his right to a fair trial was denied by other misconduct of the prosecutor during closing argument, which allegedly consisted of: (1) misstating the evidence and arguing inferences which were not supported by the record; (2) suggesting that appellant had a duty to prove himself innocent; and (3) implying that the state had satisfied its burden of proof because it had proven the appellant had a sexual attraction to children. Appellant failed to object to any of the alleged incidents during the closing argument or to seek any cautionary instructions. Only one of the grounds, the alleged misstatement of Tony Haala's testimony, was raised as a basis for appellant's motion for a new trial.

Generally, by failing to either object or seek a specific cautionary instruction, a defendant is deemed to have forfeited his right to have that issue considered on appeal. *State v. Ture*, 353 N.W.2d 502, 516 (Minn.1984). We find that appellant forfeited his right to challenge the claim of misconduct concerning the alleged misstatement of Tony Haala's testimony and the inferences which can be drawn from the testimony. Appellant failed to timely object or request a cautionary instruction. Instead, in his closing argument, appellant responded to the prosecutor's allegedly improper statements by addressing the testimony and the timing of Tony's absence from the workshop. In light of this strategy, we deem appellant to have waived his right to obtain review of that issue on appeal in the absence of plain error. *See State v. Whisonant*, 331 N.W.2d 766, 769 (Minn.1983); *State v. Stafford*, 404 N.W.2d 918, 921 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. June 26, 1987).

Reviewing in terms of plain error, we will reverse "only if the court determines that the jury verdict could reasonably have been affected by the argument," so as to have affected appellant's substantial rights. *U.S. v. Segal*, 649 F.2d at 604 (citations omitted). We find nothing in the record to support that conclusion. The state did not rely on the prior conviction alone; other evidence supported the conviction and a reasonable jury could have found appellant guilty without the other crime evidence. For this reason, appellant's failure to object and seek a cautionary instruction forfeits this claim and appellant's other claims regarding the state's closing argument.

## III.

Appellant contends there is insufficient evidence to support his conviction for criminal sexual conduct in the second degree. In evaluating the sufficiency of the evidence, the court must ascertain whether the jury could reasonably conclude from the evidence that defendant was guilty, having due regard for the state's burden of proving defendant's guilt beyond a reasonable doubt, and viewing the evidence in a light most favorable to the state. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978). Assessing the credibility of witnesses and resolving conflicting testimony is the exclusive function of the jury because it has an opportunity to observe the demeanor of witnesses and weigh their credibility. *State v. Lloyd*, 345 N.W.2d 240, 245 (Minn. 1984); *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn.1980). Inconsistencies in the state's case "do not automatically require reversal of the jury's verdict." *State v. Blair*, 402 N.W.2d 154, 158 (Minn.Ct.App.

1987). Generally, in a criminal sexual conduct prosecution "the testimony of a complainant need not be corroborated." Minn. Stat. § 609.347, subd. 1 (1986). There may be an "individual case" where absent corroboration the court may be required to hold there is insufficient evidence. *State v. Ani*, 257 N.W.2d 699, 700 (Minn.1977). However, corroboration of an allegation of sexual abuse of a child is only required if the evidence otherwise adduced is insufficient to sustain the conviction. *State v. Myers*, 359 N.W.2d 604, 608 (Minn.1984).

■ There was sufficient evidence to support appellant's conviction. In light of the conflicting testimony, it was the exclusive function of the jury to weigh the credibility of the witnesses. L.H.'s testimony describing appellant's sexual contact was positive and unequivocal and was corroborated by her statements to Shirley Stippel on July 6, just a few days after the incident. Although L.H. presented conflicting testimony as to whether or not appellant told her not to tell her mother and whether or not her brother came into the wood shop when she and appellant were alone, these inconsistencies are not sufficiently material to require reversal of the conviction and could be attributed to the passage of time and the stress of testifying. *See generally State v. Marshall*, 395 N.W.2d 362, 365–66 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Dec. 17, 1986). L.H. testified she understood the difference between truth and falsehood and stated she was telling the truth and had not made the incident up. Karen Haala specifically testified that she had never told L.H. to fabricate the story. Although the defense presented conflicting evidence on a number of matters, this court must assume the jury believed the evidence supporting the conviction and disbelieved any contrary evidence and will not interfere with the jury's assessment of credibility.

### DECISION

The trial court did not abuse its discretion in admitting the *Spreigl* evidence concerning appellant's 1981 conviction for criminal sexual conduct in the second degree or by allowing limited inquiry into the similarities between the two offenses and appellant's ability to control his sexual behavior. Appellant limited his right to obtain review of the trial court's cautionary instruction concerning the proper use of *Spreigl* evidence, and the alleged prosecutor misconduct in closing argument; the trial court's improper cautionary instruction did not constitute reversible error. The evidence is sufficient to sustain appellant's conviction.

Affirmed.