*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2329**

State of Minnesota,
Respondent,

vs.

Timothy Denzel Cross,
Appellant.

**Filed December 22, 2014
Affirmed; motion denied
Rodenberg, Judge**

Ramsey County District Court
File No. 62-CR-12-9924

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Bethany L. O'Neill, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Johnson, Judge; and Hooten, Judge.

**RODENBERG**, Judge

Appellant challenges his convictions of two counts of aiding and abetting sex trafficking (one count being for trafficking of an individual under 18), unauthorized possession of a firearm and second-degree assault, arguing that the district court erred in not granting his motions for mistrial. He also argues that the district court plainly erred in not sua sponte declaring inadmissible other-acts evidence and in not finding prosecutorial misconduct. Additionally, appellant argues that the cumulative errors deprived him of a fair trial. Respondent moves to strike portions of appellant's reply brief. We affirm the district court and deny respondent's motion.

## FACTS

On June 15, 2012, L.B., an 18-year-old resident of Duluth, asked her friend J.S., a 16-year-old from Superior, Wisconsin, to accompany her on a bus ride from the Duluth area to the Twin Cities. L.B. told J.S. that L.B. was travelling to the Twin Cities to meet up with her boyfriend, Fonati Diggs, appellant's co-defendant at trial. J.S. agreed, and L.B. purchased both of their bus tickets.

Diggs and appellant Timothy Denzel Cross met J.S. and L.B. at the bus station. Appellant drove Diggs, J.S. and L.B. to a motel in St. Paul. At the motel, appellant and Diggs asked their friend, C.P., to rent two motel rooms because neither appellant nor Diggs had IDs. C.P. booked the rooms using cash from appellant and Diggs.

J.S. and L.B. both testified that they were separated on their arrival at the hotel, one of them in each motel room. J.S. testified that appellant forced her to have sex with

him.  J.S. also testified that she was forced to have sex with two other men and was forced to do other sex acts with Diggs.

L.B. testified that she was forced to have sex with both appellant and Diggs.  The next day, appellant and Diggs required J.S. and L.B. to "walk the street" while appellant and Diggs followed close behind.  J.S. and L.B. understood they were expected to entice men to have sex with them for money.  But L.B. became sick and vomited on the sidewalk.  Appellant and Diggs picked up L.B. but required J.S. to continue to walk the street by herself.

When appellant and Diggs drove away with L.B., J.S. used a cell phone still in her possession to call family members.  J.S.'s mother answered her call and advised her to call the police.  Because J.S. was attempting to hide from appellant's and Digg's sight, and because she was unfamiliar with St. Paul, it took the police some time to find her.  Eventually, however, the police found J.S., and her mother picked her up later that night.

Meanwhile, and unable to find J.S., appellant, Diggs, and L.B. slept in a car.  The next day, L.B. was again required to "go on the street."  L.B. testified that Diggs told her "to charge $40 for a half-hour."  L.B. testified that when she made money by having sex with men, she was supposed to give it to Diggs.  L.B. testified that during the week she was with appellant and Diggs, she had sex with at least six men for money.

One day during that week, Diggs was out of town and L.B. testified that appellant "pretty much acted like my pimp" for that day.  Some time that day, appellant assaulted L.B. by punching her in the face, giving L.B. a black eye.  C.P. testified that she

3

witnessed appellant brandishing a gun in a threatening manner in front of L.B. C.P. and S.G. also testified that they knew appellant and Diggs were prostituting L.B.

Appellant was charged with two counts of engaging in sex trafficking of an individual in violation of Minn. Stat. § 609.322, subd. 1(a)(4), (b)(2) (2012), possession of a firearm by an ineligible person in violation of Minn. Stat. § 624.713, subd. 1(2) (2012), and two counts of second-degree assault with a dangerous weapon in violation of Minn. Stat. § 609.222, subd. 1 (2012). Appellant's case was joined with Diggs's case for trial to a jury.

At trial, L.B. testified, without solicitation, that she believed appellant and Diggs were in a gang.[1] Diggs's attorney objected, and the district court overruled the objection. Diggs's attorney moved for a mistrial and the district court denied the motion. During the trial testimony of Sergeant Bandemer, one of the investigators, the sergeant testified in response to an open-ended question that S.G. believed appellant and Diggs to be members of a gang. Defense counsel objected, and the objection was sustained.

At trial, all of the attorneys questioned multiple witnesses concerning the uncharged sex offenses alleged by L.B. and J.S. Counsel for appellant and Diggs each argued that even the state did not believe L.B. and J.S., because the state did not charge these other sex crimes. The state also provided testimony by Sergeant Brandemer that

---

[1] L.B. testified that at the motel on the first night in the Twin Cities, appellant and Diggs allowed their friends to enter L.B.'s motel room and force sex on her. When asked, "What did you think about the fact of him letting other men come into your room?", L.B. responded, "When we [her and Diggs] were up in Duluth, he was always, like, saying stuff about he was in a gang and everything." The prosecutor interrupted L.B.'s answer and attempted to clarify the question, but, again, L.B. testified, "I just pretty much was, like, I'm not going to fight, because they're probably all in the gang, too."

4

sex is often used in sex-trafficking cases as a "breakdown of the young girl [and] is one of the first things that a trafficker will do." Sergeant Bandemer testified that this "breakdown" allows the traffickers to "say that she's their property now and that she's the one that's going to be prostituting for them." He testified without objection that traffickers "break down young girls' . . . will to fight."

The jury found appellant guilty of aiding and abetting sex trafficking of an individual under 18, aiding and abetting sex trafficking, possession of a firearm by an ineligible person, and second-degree assault of L.B. The jury acquitted appellant of second-degree assault of J.S. The jury also found the following aggravating factors to have been proven: both J.S. and L.B. suffered bodily harm during the commission of the sex-trafficking offense and both sex-trafficking offenses involved "more than one sex-trafficking victim."

At the sentencing hearing, the district court sentenced appellant to prison for 158 months on count I; for 96 months on count III; for 60 months for the possession of a firearm by an ineligible person; and for 60 months for second-degree assault. The sentences for counts I and III were upward departures based on the jury's finding of aggravating factors and were sentenced consecutively. Counts V and VI were sentenced concurrently. The district court reasoned:

> I'm aware of the fact—I'm aware of [appellant's] age; however, the testimony in the trial was shocking, to say the least. [Appellant] and Mr. Diggs took advantage of two very vulnerable, young girls . . . who were looking for friendship and looking for somebody to trust. They thought those persons were [appellant] and Mr. Diggs. They, unfortunately, lured them in and used them to their own advantage and

5

really treated these young women in just a shocking way and, in the view of the Court, worse than they would treat any of their property.

This appeal followed.

**DECISION**

**I.**

On appeal, appellant argues that the evidence of J.S. and L.B. being raped at the motel rooms was impermissible other-acts evidence under Minnesota Rules of Evidence 404(b), that admission of that evidence was plainly erroneous, and that the testimony regarding appellant and Diggs belonging to a gang was similarly impermissible other-acts evidence. Additionally, appellant claims that the prosecutor committed misconduct in his closing statement by using the word "rape," shifting the burden of proof by asking the jury in one instance to determine "guilt or innocence," commenting on appellant's choice not to testify, misstating facts, and improperly vouching for a witness. Appellant also argues that the imposition of consecutive sentences was erroneous because it "exaggerates the criminality of appellant's conduct."

Appellant argues that the district court plainly erred in permitting testimony and argument relating to the rape of J.S. and L.B. and that it erred in admitting evidence that appellant and Diggs were in a gang. Evidence of prior bad acts of a defendant is generally inadmissible, with very narrow exceptions. Minn. R. Evid. 404(b); *see also State v. Ness*, 707 N.W.2d 676, 685 (Minn. 2006). Such prior-bad-acts evidence is often referred to as *Spreigl* evidence, after *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965). Failure to object to *Spreigl* evidence generally constitutes a waiver of the right to

6

appeal unless the defendant can show plain error. *State v. Washington*, 693 N.W.2d 195, 204 (Minn. 2005). Plain error requires the complaining party to show that the district court (1) committed error, (2) the error committed was plain, and (3) the error affects the defendant's substantial rights. *Id.* Even then, an appellate court will correct the error only when "it seriously affects the fairness, integrity[,] or public reputation of judicial proceedings." *Id.* (quotation omitted).

In *State v. Vick*, the Minnesota Supreme Court held that the district court's decision not to sua sponte strike "unnoticed *Spreigl* evidence" did not constitute plain error. 632 N.W.2d 676, 685 (Minn. 2001). The supreme court held that, even if the district court's decision not to sua sponte strike the evidence was in error, there were many factors tending to show that the admitted evidence did not "unfairly infect[] the trial." *Id.* at 686. The supreme court noted the following: that the testimony was introduced without objection; that the district court cautioned the jury that the defendant was not being charged for the acts which defendant challenged as improper *Spreigl* evidence; and that the defendant could have anticipated the other-bad-acts evidence which had not surprised the defendant. *Id.* Finally, the supreme court observed that the acts testified to were "not more inflammatory than the charged incident." *Id.*

As in *Vick*, the question presented here is not whether the evidence of appellant forcing sex on J.S. and L.B would have been admissible had there been an objection to it. Rather, the question is whether the district court's "failure to sua sponte strike the testimony or provide a cautionary instruction constituted plain error." *Vick*, 632 N.W.2d at 685. In order to find that the district court committed plain error, "the trial error must

have been so clear under applicable law . . . and so prejudicial to the defendant's right to a fair trial, that the defendant's failure to object—and thereby present the trial court with an opportunity to avoid prejudice—should not forfeit his right to a remedy." *State v. Manthey*, 711 N.W.2d 498, 504 (Minn. 2006) (quotation omitted).

The claimed error in admitting evidence and argument concerning the uncharged sex crimes is not at all clear under applicable law. As in *Vick*, none of the attorneys objected to any of the evidence offered to prove what happened on the night of June 15. While the district court was not asked to give a cautionary jury instruction, respondent's counsel, Diggs's counsel, *and* appellant's counsel *all* admonished the jury that appellant and Diggs were not being charged with rape. Here, not only was appellant on notice of respondent's intention to use evidence relating to the uncharged sex offenses, but counsel for appellant and Diggs also emphasized that evidence in arguing to the jury that J.S. and L.B. were not credible. Although allegations of rape are certainly inflammatory, they are seemingly no more inflammatory than are allegations that appellant forced L.B. and J.S., who was a minor, to prostitute themselves.

Further, it was not only respondent who elicited testimony about what happened in the motel and referred to those actions as "rape." On cross-examination of J.S. and L.B., counsel elicited extensive testimony from J.S. and L.B. about what happened in the motel on the night of June 15. Appellant *relied* on this testimony to argue to the jury in closing that J.S. and L.B. were lying, that being raped is not something J.S. or L.B. could forget, and that if the state actually believed J.S. and L.B. to be truthful, this would have been "a rape case." Therefore, appellant cannot show that the district court committed plain error

8

by choosing not to intervene. Given that the evidence and argument concerning the uncharged sex crimes were part of appellant's defense strategy, and in the absence of any objection, the district court properly refrained from injecting itself into the trial and interfering with the evident defense strategy.

Additionally, it appears likely that at least some of the evidence concerning what happened at the motel on June 15, if objected to, would not have been considered inadmissible other-bad-acts evidence. When evidence is offered to show that "two or more offenses are linked together in point of time or circumstances so that one cannot be fully shown without proving the other," that evidence is admissible under the immediate episode exception to *Spreigl*. *State v. Riddley*, 776 N.W.2d 419, 425 (Minn. 2009). If appellant had objected to the admission of testimony relating to what happened in the motel on June 15, respondent certainly would have argued that the June 15 offenses and the charged offenses were "linked together in point of time or circumstance." *Id.* Respondent doubtless would have argued that the evidence demonstrated why and how appellant and Diggs were able to prostitute J.S. and L.B. *See id.* But because there was no objection, that argument was never made. Having not been called upon to decide what, at the very least, would have been a close question under *Riddley*, the district court did not plainly err.

Appellant also argues that the district court abused its discretion when it allowed L.B. and Sergeant Bandemer to testify that appellant and Diggs were in a gang. There were three fleeting references to appellant and Diggs being in a gang. There were objections to two of those references. As to the unobjected-to reference, we see no plain

error. Unlike *State v. Carlson*, 208 N.W.2d 553 (Minn. 1978), the unobjected-to reference was fleeting and the district court properly refrained from intervening sua sponte. Doing so might have drawn even more attention to the otherwise fleeting gang reference.

As to one of the remaining references, appellant objected and the objection was sustained. The district court asked appellant if he or Diggs wanted a curative instruction, and both declined that offer. Appellant received the relief he requested and to which he was entitled concerning that reference.

The remaining reference occurred during L.B.'s testimony and the objection was overruled. After L.B.'s testimony, appellant moved for a mistrial and that motion was denied. We review the district court's decision not to grant a mistrial for an abuse of discretion. *State v. Spann*, 574 N.W.2d 47, 52 (Minn. 1998). Further, a mistrial "should not be granted unless there is a reasonable probability that the outcome of the trial would be different." *Id.* at 53. Here, the reference by L.B. to gang membership was arguably permissible to allow the jury to understand why L.B. did not fight or flee from the motel room, and was, in any event, a fleeting reference. The district court has discretion in ruling on objections and we see no abuse of that discretion in allowing the testimony in this context. Additionally, in the face of the other overwhelming evidence of appellant's guilt, any error was harmless. *See State v. Shoen*, 598 N.W.2d 370, 377 (Minn. 1999) (holding that an error is harmless when the guilty verdict rendered is "surely unattributable" to the error). Appellant is not entitled to relief on this ground.

**II.**

Appellant argues that the prosecutor engaged in multiple instances of misconduct. If there is prosecutorial misconduct, we consider whether the misconduct was harmless beyond a reasonable doubt. *State v. Roman Nose*, 667 N.W.2d 386, 401 (Minn. 2003).

The claim of misconduct with the most merit is that the prosecutor shifted the burden of proof in arguing that the jury should decide "guilt or innocence." The prosecutor made the statement to the jury during closing arguments. Appellant objected, and before the district court could make a ruling, the prosecutor stated, "I'll reword it." She proceeded to finish her closing statement without further objection. In *State v. Henderson*, the supreme court held that the district judge's instructions to the jury that the defendant did not have to prove innocence likely cured a similar error in a prosecutor's closing statement. 620 N.W.2d 688, 703 (Minn. 2001). While the district court did not give a curative instruction in this case, we observe that doing so might well have compounded what appears to us to have been an unintentional misstatement that was immediately and effectively corrected by the prosecutor herself. The prosecutor's restatement of the burden—"You're being asked to find either guilty or not guilty"—raised no further objection, and the parties and the district court seem to have believed this restatement to be adequate. The prosecutor's misstatement was harmless beyond a reasonable doubt.

Appellant argues that the prosecutor misstated facts during closing when she stated without objection that L.B. "had no idea what was waiting for [her], at all" when she arrived in the Twin Cities. Appellant argues that this is misconduct because "the

11

prosecutor knew that L.B. was a victim in four other sex trafficking cases." However, L.B.'s involvement in other sex trafficking cases was never presented to the jury in this case. And L.B. testified that she travelled to the Twin Cities to see Diggs, whom she considered her boyfriend. Based on the record evidence in *this case*, the prosecutor's statement was neither error nor misconduct.

Appellant makes other claims of prosecutorial misconduct, none of which were brought to the district court's attention by objection. On careful review, we see no merit to any of those claims of plain error.

Appellant argues that the cumulative effect of the claimed trial errors deprived him of a fair trial. But, because there was no plain error in admitting the rape evidence, because the admission of two fleeting references to gang involvement was not erroneous, and, in any event, any error concerning it was harmless, and because there was no prosecutorial misconduct, there was no cumulative error that deprived appellant of his fair trial rights.

**III.**

Appellant also challenges his sentences on appeal. Although appellant does not challenge the upward departures, and agrees that the consecutive sentences imposed by the district court are permissive, he argues that the sentence "exaggerate[ed] the criminality of appellant's conduct." Our review of a district court's decision to impose consecutive sentences when permissible is for an abuse of discretion. *State v. Richardson*, 670 N.W.2d 267, 284 (Minn. 2003). It is permissive to impose a consecutive sentence when there are multiple victims. *Id.*

12

Appellant cites to no cases showing that this consecutive sentence for multiple victims exaggerated the criminality of appellant's conduct. To be fair, there is very little Minnesota caselaw concerning sentencing in sex-trafficking cases. Appellant argues that the consecutive sentences were "disproportionate to the severity of appellant's involvement in the crimes" and that Diggs was primarily responsible for these crimes. Further, appellant points out that J.S. never actually engaged in prostitution because she was able to call 911 and leave appellant and Diggs after L.B. got sick. None of these arguments was presented to the district court. The only argument appellant made to the district court was that he is young and any sentence longer than 15 years would serve no societal purpose.

While Diggs arguably is more culpable than appellant, appellant played an active role in the crimes. He was a significant actor in a sex-trafficking operation that victimized two young women, one of whom is a minor. It was within the district court's discretion to sentence appellant to consecutive sentences, and we see no abuse of that discretion.

**IV.**

Respondent filed a "Motion To Strike New Argument From Reply Brief," arguing that appellant's principal brief failed to reference the plain-error standard in arguing that the district court's decision to admit *Spreigl* evidence was erroneous. Appellant's principal brief argued that the abuse-of-discretion standard should be applied. Respondent's brief argued that the plain-error standard applies. Appellant's reply brief accepts and applies the plain-error standard advanced by respondent. Respondent argues

13

that allowing appellant to accept in his reply brief the standard of review advanced by respondent's brief "would put the State in an impossible position: either it does not make a waiver argument and thereby waives such an argument, or it makes a waiver argument and thereby creates the opportunity for the appellant to make a plain-error argument for the first time in a reply brief."

This court and the Minnesota Supreme Court have stated that arguments raised for the first time in the reply brief are waived. *See State v. Yang*, 774 N.W.2d 539, 558 (Minn. 2009) (citing to the rules of civil appellate procedure to support the holding that the reply brief is limited to any new subject matter raised in the respondent's brief and because it was not raised in the respondent's brief or the appellant's principal brief it was waived), *State v. Stockwell*, 770 N.W.2d 533, 541 (Minn. App. 2009) ("Because appellant failed to raise this issue in her principal brief, we do not address this issue on appeal."). In those cases, the respondent would have been entirely blind-sided by the issue argued in the reply brief and unable to respond. Here, however, appellant's failure to argue the plain-error standard of review in his principal brief did not deprive respondent of notice or the opportunity to effectively brief the issue. Respondent's brief of the proper standard of review was so effective, in fact, that appellant's reply brief concedes the issue of the proper standard. Respondent's motion to strike is denied.

**Affirmed; motion denied.**

14