*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1444**

State of Minnesota,
Respondent,

vs.

Francis Allen Skinness,
Appellant.

**Filed August 31, 2015
Affirmed
Halbrooks, Judge**

Olmsted County District Court
File No. 55-CR-13-3457

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Assistant County Attorney, Rochester, Minnesota (for respondent)

Thomas R. Braun, David L. Liebow, Restovich Braun & Associates, Rochester, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Peterson, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

Appellant challenges his conviction of first-degree criminal sexual conduct, arguing that the district court abused its discretion by admitting *Spreigl* evidence and by

allowing the prosecutor to ask leading questions on direct examination of the juvenile victim. We affirm.

## FACTS

On April 9, 2013, an out-of-state law-enforcement agency contacted the Olmsted County sheriff's office because a juvenile female (victim A) had reported that she had been sexually abused in 2005 and 2006 in Olmsted County. Victim A participated in a forensic interview and stated that her third-grade teacher, whom she identified as appellant Francis Allen Skinness, had sexually abused her. She stated that Skinness would take her to a small room in the school, hold her tightly against him while "his privates were sticking outward," pull down his pants, and make her touch his "privates . . . until white stuff came out." On different occasions, Skinness would put his privates in her mouth, touch her chest under her shirt, touch her crotch on the skin, or put his finger inside of her. Victim A stated that when she would cry, Skinness would slap her and tell her to stop crying. Victim A explained that she did not tell anyone about the abuse until 2012 because Skinness threatened to hurt her family. A police detective interviewed Skinness, who stated that he was a third-grade teacher at the elementary school between 2005 and 2006 and that he had a "limited memory" of victim A.

The state charged Skinness with one count of first-degree criminal sexual conduct, in violation of Minn. Stat. § 609.342, subd. 1(a) (2004), and two counts of second-degree criminal sexual conduct, in violation of Minn. Stat. § 609.343, subd. 1(a), (c) (2004). Skinness was previously convicted of second-degree criminal sexual conduct for sexually abusing female students in his 2008-2009 third-grade class.

On September 4, 2013, the state provided notice that it might seek to introduce *Spreigl* evidence of Skinness's prior criminal sexual conduct. Skinness moved the district court to exclude the evidence because the state failed to clearly indicate the purpose of the evidence, as required by Minn. R. Evid. 404(b)(2). On March 4, 2014, the state filed an amended notice, adding one potential witness and stating that the evidence was "admissible for proof of common scheme or plan, identity of the perpetrator, and to rebut possible claims of fabrication and/or mistake by the complainant."

At a pretrial hearing, the district court heard Skinness's motion to exclude the *Spreigl* evidence. The state explained that it "intend[ed] to focus on four particular witnesses listed in the amended notice," two of whom were the victims from the prior criminal-sexual-conduct offense. The state indicated that it intended "to present this *Spreigl* evidence to show a common scheme or plan on the part of the defendant and to rebut possible claims of fabrication or that somehow the complainant in this case . . . is mistaken about what happened." Prior to the start of the jury trial, the district court granted the state's *Spreigl* motion with respect to four witnesses: E.R., J.D., O.K., and M.C.

At trial, the district court read the instructions on *Spreigl* evidence to the jury before each *Spreigl* witness testified. E.R. testified that when she was a student in Skinness's class, Skinness sometimes had her sit on a stool, called the "hot seat," with his legs around her and she could feel his genitals on her back. E.R. also testified that Skinness would put his fingers down her shirt and would put his lips against her ear, "rubbing up against [her] ear." J.D. testified that Skinness put his hands down her shirt

3

and touched her thighs while in class. O.K. testified that Skinness would press up against her so she could feel his genitals, "he would get very aggressive" when she would try to get away, and he would put his hand down her shirt while in class and touch her breasts. M.C. did not testify at trial.

Victim A also testified. During a break in victim A's testimony, after multiple attempts to elicit testimony regarding certain details of the sexual abuse, victim A asked if the prosecutor "could just ask her yes or no questions" about "the oral sex part" because it was too difficult for her to talk about. Skinness's counsel objected because the leading questions concerned a critical element of the charged offenses. The district court allowed the prosecutor to ask limited leading questions, stating, "I am concerned for her welfare that this will be too traumatizing for her and she won't be able to say anything."

The jury found Skinness guilty of all three counts. The district court entered judgment of conviction on count one, first-degree criminal sexual conduct, and sentenced Skinness to 144 months in prison. This appeal follows.

## D E C I S I O N

### I.

Evidence of other crimes, wrongs, or acts, also known as *Spreigl* evidence, is not admissible to prove that a defendant acted in conformity with his character. Minn. R. Evid. 404(b); *State v. Spreigl*, 272 Minn. 488, 490, 139 N.W.2d 167, 169 (1965). But the evidence may be admitted for other purposes, such as to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Minn. R. Evid. 404(b); *State v. Campbell*, 861 N.W.2d 95, 102 (Minn. 2015). We review a

4

district court's decision to admit *Spreigl* evidence for an abuse of discretion. *State v. Ness*, 707 N.W.2d 676, 685 (Minn. 2006).

District courts follow a five-step process when determining the admissibility of *Spreigl* evidence:

> (1) the prosecutor gives notice of its intent to admit the evidence consistent with the Rules of Criminal Procedure; (2) the prosecutor clearly indicates what the evidence will be offered to prove; (3) the other crime, wrong, or act and the participation in it by a relevant person are proven by clear and convincing evidence; (4) the evidence is relevant to the prosecutor's case; and (5) the probative value of the evidence is not outweighed by its potential for unfair prejudice to the defendant.

Minn. R. Evid. 404(b).

Procedurally, Skinness argues that the state failed to provide timely notice, did not clearly indicate what the evidence would be offered to prove, and failed to list O.K. as a potential *Spreigl* witness in its original notice. Substantively, Skinness argues that the evidence is not relevant and that the evidence's probative value is outweighed by its potential to create unfair prejudice.

**Timely Notice**

The rules of evidence require that the state provide notice of its intent to admit *Spreigl* evidence consistent with the rules of criminal procedure. Minn. R. Evid. 404(b)(1). The Minnesota Rules of Criminal Procedure provide that "[t]he prosecutor must notify the defendant or defense counsel in writing of any crime, wrong, or act that may be offered at the trial under Minn. R. Evid. 404(b)" and that "the notice must be given at or before the Omnibus Hearing under Rule 11, or as soon after that hearing as

the other crime, wrong, act, or specific instance of conduct becomes known to the prosecutor." Minn. R. Crim. P. 7.02, subds. 1, 4. The rule also states that "[n]o notice is required for any crime, wrong, or act . . . previously prosecuted." *Id.*, subd. 1. Here, two of the *Spreigl* witnesses, O.K. and E.R., were the victims in the previously prosecuted case that resulted in appellant's conviction of second-degree criminal sexual conduct. Therefore, the timely notice requirement does not apply to their *Spreigl* testimony. The state was only required to provide timely notice regarding J.D.'s *Spreigl* testimony.

"[T]he purpose of the notice requirement is to prevent a defendant from being taken by surprise by the introduction of evidence of collateral bad acts." *State v. McCoy*, 682 N.W.2d 153, 159 (Minn. 2004). To warrant reversal, the untimely notice must prejudice Skinness. *See State v. Woodward*, 256 N.W.2d 478, 479 (Minn. 1977) (concluding that, although the *Spreigl* notice was late, the "defendant does not appear to have been prejudiced by the tardiness" because "[f]ormal notice was given 3 days before the trial began and defendant has not shown that he did not have adequate time to prepare to meet the evidence").

Here, the omnibus hearing was held on September 3, 2013. The same day, the prosecutor drafted the "notice of prosecuting authority of evidence of additional offense(s) to be offered at trial pursuant to rule 7.02" and filed it the next day, on September 4, 2013. Skinness requested that the district court reschedule the jury trial so that, in part, he could have time to review and formally respond to the *Spreigl* notice. The parties convened for a motion hearing on November 6 and discussed the *Spreigl* issue. On February 24, 2014, Skinness formally moved the district court to exclude all

*Spreigl* evidence. The state then filed an amended notice on March 4, and Skinness moved again for the district court to exclude all *Spreigl* evidence. At a pretrial hearing on March 7, both parties fully argued the *Spreigl* issue on the record.

The record demonstrates that Skinness was not "taken by surprise" and had ample time to prepare for the introduction of the *Spreigl* evidence. *See McCoy*, 682 N.W.2d at 159. Therefore, we conclude that the timing of the *Spreigl* notice did not prejudice Skinness. *See State v. Bolte*, 530 N.W.2d 191, 199 (Minn. 1995) ("While reaffirming the importance of and the need for full compliance with the notice requirements of *Spreigl* . . . we believe that the record in this case demonstrates . . . lack of prejudice to the defendant.").

**Failure to List O.K. as Potential Witness**

Skinness concedes that under Minn. R. Crim. P. 7.02, subd. 1(a), the state was not required to provide notice that O.K. might testify at his trial. But he argues that because the state originally provided notice that it intended to call E.R., the other victim in his previously prosecuted case, the state's failure to originally list O.K. as a witness "practically guaranteed" that he would be "confused" as to which witnesses the state might call.

The state provided notice that it intended to call O.K. as a *Spreigl* witness in its amended notice on March 4, and Skinness had the opportunity to object to the amended notice in his March 6 motion. The parties then fully argued the issue at the hearing on March 7. Because the state provided notice that it intended to call both witnesses, Skinness could not reasonably be "confused" as to whether the state intended to call O.K.

7

And mere confusion is not the standard; advance *Spreigl* notice protects the defendant from unfair "surprise." *McCoy*, 682 N.W.2d at 159. The state provided Skinness with advance notice that it intended to call O.K., and O.K. is one of Skinness's prior victims; Skinness could not have been surprised when O.K. testified. Skinness does not point to any caselaw in which a court has reversed a conviction for the state's failure to provide notice that it might call a potential witness when the rules do not require the state to provide that notice, and he does not allege any prejudice from the state's admitted "human error" in failing to list O.K. as a witness at the time it provided notice that E.R. might testify. We decline to reverse his conviction on this basis. *See Woodward*, 256 N.W.2d at 479 (requiring that notice actually be deficient and also prejudice the defendant before reversing conviction).

**Clear Indication of What the Evidence Would Be Offered to Prove**

Skinness argues that the September 4 notice incorrectly identified the purpose for which the evidence would be offered and identified it with "insufficient particularity and clarity." Because *Spreigl* evidence has the potential to be used for improper purposes, the rules require that the prosecutor clearly indicate what the evidence will be offered to prove. Minn. R. Evid. 404(b)(2). An appellant who claims that the district court "erred in admitting evidence bears the burden of showing the error and any resulting prejudice." *Ness*, 707 N.W.2d at 685 (quotation omitted).

The September 4 notice states that the prosecutor may offer evidence of Skinness's 2009 offense to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" and "evidence of conduct

8

involving or observed by the following witnesses/victims, admissible for proof of motive, intent, or absence of mistake or accident." In the amended notice, the prosecutor indicated that the evidence would be offered to prove "common scheme or plan, identity of the perpetrator, and to rebut possible claims of fabrication and/or mistake by the complainant." And at the March 7 hearing, the prosecutor stated:

> In this case, the State would intend to present this *Spreigl* evidence to show a common scheme or plan on the part of the defendant and to rebut possible claims of fabrication or that somehow the complainant in this case, [victim A], is mistaken about what happened. . . .
>
> . . . [I]t appears that the Defense will claim that [victim A] fabricated the defendant's sexual abuse of her and for that reason the State offers this to show common scheme or plan and to rebut possible claims of fabrication. . . .
>
> . . . .
>
> . . . [I]n the context of sexual abuse, particularly the sexual abuse of children, common scheme or plan can be— can be used to show the very doing of the act charged. In other words, to prove that it happened. . . . [T]o rebut fabrication on the part of [victim A]. . . . So that's what this evidence is being offered for, is to establish a common scheme or plan on the part of the defendant to prove the very doing of the act charged, that [victim A] is not fabricating that this happened to her.

Although the prosecutor did not indicate in the original notice that the evidence would ultimately be offered to prove common scheme or plan and to rebut fabrication, the prosecutor clearly stated those purposes in the amended notice and at the March 7 hearing. The district court ruled on the admissibility of the *Spreigl* evidence only after hearing the parties' arguments and reviewing the evidence and proffered purposes.

9

Therefore, the prosecutor clearly indicated what the evidence would be offered to prove, and Skinness has failed to show that he was prejudiced by the prosecutor's failure to clearly indicate the purpose of the evidence in the original notice.

**Relevance and Materiality**

If used to demonstrate that there is a common scheme or plan, the conduct of the prior act and the charged act "must have a marked similarity in modus operandi to the charged offense." *Id.* at 688. The closer the relationship between the past offense and the charged offense, "in terms of time, place, or modus operandi, the greater the relevance and probative value of the [*Spreigl* ] evidence." *Id.*

The state concedes that the *Spreigl* incidents are not identical to the charged offense, acknowledging that the *Spreigl* incidents all occurred in Skinness's classroom, while the charged offense occurred privately in the room across the hall from the classroom. But all of the conduct involved third-grade students, occurred at the elementary school during the time frame of 2005 to 2009, and involved Skinness's acts of putting his hands down students' shirts and around their waist area and pressing his genitals against the students. We conclude that the *Spreigl* evidence and the charged offense are markedly similar.

The Minnesota Supreme Court has affirmed the admission of other-crimes evidence in sexual abuse prosecutions on the ground that "it was highly relevant to the specific issue of whether the conduct on which the charge was based actually occurred or was, as the defendants contended, a fabrication or a mistake in perception by the victim." *Wermerskirchen*, 497 N.W.2d at 242. In *Wermerskirchen*, the supreme court stated that

10

"[t]he evidence was highly relevant in that it showed an ongoing pattern of opportunistic fondling of young girls within the family context and, therefore, tended to disprove the defense that M.W. was fabricating or imagining the occurrence of sexual contact." *Id.* Similarly, here, the evidence that Skinness previously sexually abused his students shows "an ongoing pattern of opportunistic fondling of young girls within the [third-grade school] context." Because the *Spreigl* offenses and the charged offense are markedly similar, the district court did not abuse its discretion by finding that the *Spreigl* evidence was relevant to the charged offense.

**Probative Value Versus Prejudicial Effect**

"Even if evidence is relevant, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *Kennedy*, 585 N.W.2d at 391 (quotation omitted).

> [W]hen balancing the probative value of *Spreigl* evidence against the potential for unfair prejudice, the [district] court must consider how necessary the *Spreigl* evidence is to the state's case. Only if the other evidence is weak or inadequate, and the *Spreigl* evidence is needed as support for the state's burden of proof, should the [district] court admit the *Spreigl* evidence.

*State v. Berry*, 484 N.W.2d 14, 17 (Minn. 1992) (citation omitted). The need for the *Spreigl* evidence does not necessarily mean "the absence of sufficient other evidence to convict. . . . [T]he evidence of other offenses may be needed because, as a practical matter, it is not clear that the jury will believe the state's other evidence bearing on the disputed issue." *Ness*, 707 N.W.2d at 690 (quotation omitted).

11

The state sought to prove that Skinness had sexually abused victim A in private at school several years ago. Much of the state's case rested on victim A's statements. Therefore, the *Spreigl* evidence that Skinness had previously committed sexual misconduct against his third-grade students was "needed" because "it [was] not clear that the jury [would] believe the state's other evidence bearing on the disputed issue." *See id.*

The district court found that the *Spreigl* evidence was not unduly prejudicial because the state reduced the number of witnesses who would testify and the jury received instructions on the limited purpose of the evidence. The district court found that the evidence was not "an attempt to persuade by illegitimate means and the State has . . . the right to show a common plan and scheme and these records are relevant to doing that in a way that is not unduly or unfairly prejudicial." The district court did not abuse its discretion by finding that the evidence's probative value was not outweighed by the danger of unfair prejudice.

## II.

Skinness argues that the district court abused its discretion by allowing the prosecutor to ask leading questions during the direct examination of victim A. "Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony." Minn. R. Evid. 611(c). We will not reverse the district court's decision on the use of leading questions absent a clear abuse of discretion. *Ossenfort v. Associated Milk Producers, Inc.*, 254 N.W.2d 672, 679 n.7 (Minn. 1977).

There is limited caselaw addressing the use of leading questions by the state where a juvenile victim is hesitant to describe the alleged sexual abuse during trial. *See State v. Newman*, 93 Minn. 393, 394, 101 N.W. 499, 500 (1904) (concluding that the district court did not abuse its discretion by permitting the prosecutor to ask leading questions in a trial for "the crime of carnally knowing a female child more than ten and under fourteen years of age" to the witness who "was in some particulars an unwilling witness"); *see also United States v. Rossbach*, 701 F.2d 713, 718 (8th Cir. 1983) (concluding that the district court did not abuse its discretion by permitting leading questions to victims who were "hesitant to answer questions regarding the sexual assaults"); *United States v. Iron Shell*, 633 F.2d 77, 92 (8th Cir. 1980) (concluding that the district court did not abuse its discretion by permitting the prosecutor to ask leading questions because "[t]he victim's hesitancy to testify concerning this matter was understandable").

The committee comments to rule 611(c) state:

> The use of leading questions is left to the discretion of the [district] court. Generally, leading questions should not be permitted when the witness is sympathetic to the examiner. However, for preliminary matters and the occasional situation in which leading questions are necessary to develop testimony because of temporary lapse of memory, mental defect, immaturity of a witness, etc., the court may permit inquiry by leading questions on direct examination.

Minn. R. Evid. 611(c) 1977 comm. cmt.

Here, victim A was a teenager at the time of the trial, but she was recalling a traumatic experience that occurred when she was eight years old. It is apparent from the record that she was upset and reluctant to share what happened to her. During the

forensic interview, she indicated that she did not want to see Skinness and that she did not want her parents to hear her describe the abuse. In addition, she opted to write down portions of the abuse during the forensic interview because it was too difficult for her to talk about it.

During trial, the district court allowed the prosecutor to ask limited leading questions, and the following testimony occurred:

> Q: Was the part of his body—Well, first of all, did you tell [the therapist] and [the forensic interviewer] that the part of his body—the other part of his body that you touched was his penis?
> A: Yes.
> Q: And did you tell them that the parts of your body that touched his penis were your hand and your mouth?
> A: Yes.

The prosecutor then resumed asking non-leading questions.

Based on this record, we conclude that the district court did not abuse its discretion by allowing leading questions because this qualifies as an "occasional situation in which leading questions are necessary to develop testimony because of . . . immaturity of a witness, etc." Minn. R. Evid. 611(c) 1977 comm. cmt.

**Affirmed.**

14