*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0465**

State of Minnesota,
Respondent,

vs.

Emery Scott Whitt,
Appellant.

**Filed February 29, 2016
Affirmed
Reyes, Judge**

Scott County District Court
File No. 70CR1322507

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Ronald Hocevar, Scott County Attorney, Todd P. Zettler, Assistant County Attorney, Shakopee, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Reyes, Presiding Judge; Peterson, Judge; and Halbrooks, Judge.

### U N P U B L I S H E D   O P I N I O N

**REYES**, Judge

        On appeal from his conviction of first-degree criminal sexual conduct, appellant argues that the district court erroneously admitted *Spreigl* evidence at trial. We affirm.

## FACTS

G.T., the complainant in this case, was born on April 25, 2001. In 2002, G.T.'s family resided in Eagan. Appellant Emery Scott Whitt became acquainted with G.T. and her family because he did maintenance work on the Eagan property where the family lived. G.T.'s family decided to move to Chaska in 2006. Around that time, appellant lost his job and apartment, so G.T.'s family invited appellant to move in to the Chaska home with them. G.T.'s family later moved to Savage in 2007, and appellant moved with them.

During the 2007 to 2008 time frame, G.T.'s mother, K.I., struggled with mental-health issues. She was addicted to prescription pain medications and was often asleep during the day. G.T.'s stepfather, M.I., was out of the house frequently, either working or at school, so appellant regularly cared for G.T. and her siblings.

Starting in 2006, when G.T. was five, and continuing until appellant moved out of the family home in 2008, appellant sexually and physically abused G.T. Appellant forced G.T. to have oral and vaginal sex with him. If G.T. resisted, appellant would slap her and tell her that she had no choice. If G.T. would cry, appellant would cover her mouth to muffle the sound. Afterwards, appellant would threaten to hurt G.T. and her siblings if she told anyone. Though the abuse did not happen daily, it occurred repeatedly. The abuse stopped when appellant moved out of the family home in 2008.

In 2012, K.I. and her children began residing in various temporary residences. The county opened an investigation into the family home. Following that investigation, G.T. was sent to a residential treatment center to help her with her depression, anxiety,

and destructive self-harm behaviors. G.T.'s siblings, however, were returned to K.I.'s care.

While at the residential treatment center, G.T. saw therapist Emily Merrill. Over time, G.T. grew to trust Merrill and eventually disclosed that appellant had abused her sexually and physically. Merrill learned that she was the first person with whom G.T. had shared this information. Merrill informed G.T. that she would have to make a child-protection report about the abuse, which upset G.T.

As a result of the child-protection report, Merrill was asked to make a report with the Savage Police Department, and G.T. was interviewed by a nurse practitioner, Laurel Edinburgh, at Midwest Children's Resource Center. G.T. was 12 years old when Edinburgh interviewed her. G.T. had a difficult time sharing her experiences with Edinburgh. According to Edinburgh, this behavior was not unusual given what G.T. had been through. G.T. eventually discussed the acts of abuse with Edinburgh in detail.

The state charged appellant with two counts of first-degree criminal sexual conduct and two counts of second-degree criminal sexual conduct. At a pretrial hearing on October 14, 2014, arguments were made by both parties about allowing appellant's niece, C.S., to testify at trial about alleged abuse by appellant. The alleged acts of abuse involving C.S. occurred in August of 2012 in Texas when C.S. was 13 years old. C.S. claims that appellant sexually assaulted her one night when she stayed over at her grandmother's house. C.S. did not tell anyone about the abuse right away because she

was afraid. A prosecution of appellant in Texas for these acts resulted in a hung jury.[1] The district court ruled that C.S.'s testimony was admissible. However, because the incident involving C.S. had not resulted in a conviction, the court required C.S. to testify in person.

Several other people testified at trial, including G.T.; K.I.; C.S.; Merrill; Edinburgh; Tiron Beane, an informant with whom appellant shared stories about the alleged acts of abuse he perpetrated; Dr. Alice Swenson, a physician who specializes in the area of child sexual abuse; and appellant. The jury found appellant guilty of all four counts. The district court convicted appellant and sentenced him to 172 months imprisonment for first-degree criminal sexual conduct. This appeal follows.

### D E C I S I O N

Appellant argues that the district court committed reversible error by admitting C.S.'s testimony because the prior bad acts do not meet the "markedly similar" standard. We disagree.

We review the district court's decision to admit evidence of other crimes, wrongs, or acts for an abuse of discretion. *State v. Campbell*, 861 N.W.2d 95, 102 (Minn. 2015). Evidence of a defendant's other "crime, wrong, or act," otherwise known as *Spreigl* evidence, cannot be admitted to prove the defendant's character to show that the defendant acted in conformity therewith on a particular occasion. Minn. R. Evid. 404(b); *State v. Spreigl*, 272 Minn. 488, 490–91, 139 N.W.2d 167, 169 (1965). But such

---

[1] The case will be retried.

evidence may be admissible for "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Minn. R. Evid. 404(b). District courts follow a five-step process when determining whether to admit *Spreigl* evidence:

> (1) the prosecutor gives notice of its intent to admit the evidence consistent with the Rules of Criminal Procedure; (2) the prosecutor clearly indicates what the evidence will be offered to prove; (3) the other crime, wrong, or act and the participation in it by a relevant person are proven by clear and convincing evidence; (4) the evidence is relevant to the prosecutor's case; and (5) the probative value of the evidence is not outweighed by its potential for unfair prejudice to the defendant.

*Id.*

A bad act is admissible under the common scheme or plan exception if it has a "marked similarity in modus operandi to the charged offense." *State v. Ness*, 707 N.W.2d 676, 688 (Minn. 2006). The closer the relationship between the past and charged offense, "in terms of time, place, or modus operandi, the greater the relevance and probative value of the [*Spreigl*] evidence." *Id*. But the other act "need not be identical in every way to the charged crime." *Id.* (quotation omitted); *see also State v. Berry*, 484 N.W.2d 14, 17 (Minn. 1992) ("Absolute similarity between the charged offense and the *Spreigl* incident is not required to establish relevancy.").

Initially, the parties dispute whether appellant preserved the "markedly similar" argument for appeal. Appellant asserts that he preserved the argument, and his claim is

5

therefore subject to the harmless-error test.[2]  Respondent cites *State v. Rodriguez*, 505 N.W.2d 373, 376 (Minn. App. 1993), in support of its contention that appellant is asserting a new theory on appeal, so the claim must be reviewed under the plain-error test.  Under both the harmless- and plain-error tests, an error not affecting appellant's substantial rights must be disregarded.  Minn. R. Crim. P. 31.01, 31.02.  Because we conclude that any error in this case did not affect appellant's substantial rights, we need not opine on whether the argument was properly preserved for appeal.

"[A]n error affects a defendant's substantial rights if there is a reasonable likelihood that the error had a 'significant effect' on the verdict."  *State v. Finch*, 865 N.W.2d 696, 703 (Minn. 2015) (quoting *State v. Sontoya*, 788 N.W.2d 868, 873 (Minn. 2010)).  In determining whether the evidence significantly affected the verdict, we consider the strength of the state's other evidence, the manner in which the evidence was presented, whether the state referenced the evidence in closing arguments, any evidence appellant may have produced in his defense, and whether the district court gave a cautionary instruction.  *State v. Bolte*, 530 N.W.2d 191, 198-99 (Minn. 1995); *see also State v. Clark*, 738 N.W.2d 316, 347-38 (Minn. 2007) (discussing the lack of prejudice to appellant due to a cautionary instruction with respect to *Spreigl* evidence).

Here, other evidence supporting the jury's verdict was strong.  Numerous other people testified at trial to corroborate G.T.'s version of events.  In particular, appellant's

---

[2] Before the district court, appellant objected on the grounds that respondent failed to prove the prior bad acts by clear and convincing evidence and because the evidence would clearly prejudice appellant.

cell mate, Tiron Beane, testified regarding appellant's recounting the acts of abuse he perpetrated. Beane had knowledge of specific details of the sexual and physical abuse that corroborated the testimony of both complainants. And Beane had no way of knowing these details, if appellant had not shared this information with him. Furthermore, Beane had no incentive to testify against appellant. He did not receive any leniency or favorable treatment for his testimony. Moreover, K.I.'s testimony established that appellant had the opportunity to commit the acts of abuse. And the medical professionals who evaluated G.T., Edinburgh and Dr. Swenson, confirmed that G.T.'s physical and emotional state was consistent with having suffered sexual abuse.

As to the other factors, C.S. testified in person, was consistent in her account of events, and her testimony was discussed by the state during closing argument. But appellant highlighted the fact that no conviction resulted from the prosecution of appellant in Texas. Additionally, appellant was able to cross examine C.S. at trial. And appellant himself testified and had the opportunity to share his version of events. Finally, the district court twice gave cautionary instructions regarding the proper use of C.S.'s testimony.

Because the state's other evidence was strong, appellant had the opportunity to refute C.S.'s testimony, and the court gave cautionary instructions to the jury, we conclude that C.S.'s testimony did not significantly impact the verdict and therefore did not affect appellant's substantial rights. Accordingly, we need not consider the other elements of either the harmless- or plain-error test. Minn. R. Crim. P. 31.01, 31.02.

**Affirmed.**