*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0825**

State of Minnesota,
Respondent,

vs.

Marcus Anthony Mattox,
Appellant.

**Filed April 11, 2016
Affirmed
Smith, Tracy, Judge**

Ramsey County District Court
File No. 62-CR-14-7094

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rochelle R. Winn, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Smith, Tracy, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SMITH, TRACY**, Judge

On appeal from his convictions for felony domestic assault, terroristic threats, theft, false imprisonment, and three counts of fifth-degree assault, appellant Marcus

Anthony Mattox argues that the state discriminated on the basis of race in excluding a prospective juror. Mattox raises several additional arguments in a pro se supplemental brief. Because the district court did not clearly err in finding that Mattox failed to prove purposeful racial discrimination and because the other arguments in Mattox's pro se supplemental brief lack merit, we affirm.

## FACTS

On September 17, 2014, Mattox assaulted and threatened his girlfriend, R.O. The assault continued into the apartment hallway, where Mattox assaulted three neighbors and stole one neighbor's cell phone. The state charged Mattox with felony domestic assault, terroristic threats, theft, three counts of fifth-degree assault, and false imprisonment.

Following voir dire, the state exercised a peremptory challenge to exclude prospective juror A.J. from the jury panel. Because A.J. was the only African-American prospective juror remaining on the panel, Mattox challenged the exclusion under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712 (1986), which prohibits the state from striking a prospective juror on the basis of race.

The district court found that Mattox had not made a prima facie showing of purposeful discrimination, but nevertheless asked the prosecutor to provide a race-neutral reason for her peremptory challenge. The prosecutor explained that, while observing the panel during voir dire, she saw A.J. "at least on four occasions, exchange glances with [Mattox], and they smiled at each other . . . several times." In addition, according to the prosecutor, A.J. returned for the second day in "an extremely low-cut blouse and continued the same behavior." The prosecutor explained that she used a peremptory

2

challenge because (1) "it is clear that [A.J. has] formed at least a bare attachment to [Mattox]"; (2) A.J. "immediately looked away" whenever the prosecutor made eye contact with her, showing that "she was favoring one side over the other"; and (3) A.J. was "overly hostile" and "not as engag[ed]" as other potential jurors. The district court stated that it had not observed any conduct favoring one side or the other, but had observed that A.J. made "little eye contact" during questioning and did not volunteer much information. Mattox's attorney responded that, while A.J. appeared bored, A.J. was engaged and respectful; that the prosecutor was also wearing a "low-cut blouse"; and that attire was not a legitimate reason for a peremptory challenge.

The district court denied Mattox's *Batson* challenge, ruling that (1) Mattox had not established a prima facie case of purposeful discrimination; (2) the state had provided sufficient race-neutral explanations for its peremptory challenge; and (3) Mattox had not shown that the race-neutral explanations were pretextual or that the real reason for the peremptory challenge was the prospective juror's race.

The jury found Mattox guilty of all seven charges. Mattox appealed.

**D E C I S I O N**

**I.**

Mattox argues that the district court clearly erred by denying his *Batson* challenge. The Equal Protection Clause of the United States Constitution forbids a prosecutor from challenging potential jurors "solely on account of their race." *Batson*, 476 U.S. at 89, 106 S. Ct. at 1719.

To make a successful *Batson* challenge, the defendant must first make a prima facie showing that the state exercised a peremptory challenge on the basis of race, the burden then shifts to the state to articulate a race-neutral explanation, [and] then the district court must determine whether the defendant met his burden of proving intentional discrimination.

*State v. McDonough*, 631 N.W.2d 373, 385 (Minn. 2001); *see Batson*, 476 U.S. at 96-98, 106 S. Ct. at 1723-24; *see also* Minn. R. Crim. P. 26.02, subd. 7(3). The district court's determination on a *Batson* challenge "will not be reversed unless clearly erroneous." *McDonough*, 631 N.W.2d at 385. We give deference to the district court's *Batson* determination because "the record may not accurately reflect all relevant circumstances that may properly be considered." *State v. White*, 684 N.W.2d 500, 506 (Minn. 2004).

The district court found that Mattox failed to establish a prima facie case of purposeful discrimination. *See id.* at 505 (explaining that a prima facie case of racial discrimination requires "(1) that one or more members of a racial group have been peremptorily excluded from the jury; and (2) that circumstances of the case raise an inference that the exclusion was based on race"). But because the district court continued the *Batson* analysis and "ruled on the ultimate question of intentional discrimination, the question whether [Mattox] made a prima facie showing is moot." *See State v. Scott*, 493 N.W.2d 546, 548 (Minn. 1992). We continue to the next step under *Batson*.

The state has the burden to "articulate a race-neutral explanation" for its peremptory challenge. *McDonough*, 631 N.W.2d at 385. Here, the prosecutor provided three race-neutral explanations for her peremptory challenge: (1) "it is clear that [A.J. has] formed at least a bare attachment to [Mattox]"; (2) A.J. "immediately looked away"

whenever the prosecutor made eye contact with her, showing that "she was favoring one side over the other"; and (3) A.J. was "overly hostile" and "not as engag[ed]" as other potential jurors. No discriminatory intent is inherent in these explanations. *See id.* ("Unless a discriminatory intent was inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." (quotation omitted)). As a result, the state met its burden to articulate a race-neutral explanation for its peremptory challenge. *See id.*

Finally, the district court determined that Mattox had not met his burden to show that the state's race-neutral explanations were pretextual and the real reason for the strike was intentional discrimination. At this third step, "the district court may take into consideration whether the [s]tate's strike will result in the disproportionate exclusion of members of a certain race." *State v. Carridine*, 812 N.W.2d 130, 136 (Minn. 2012). The district court also evaluates the prosecutor's intent. *State v. James*, 520 N.W.2d 399, 403 (Minn. 1994). "A [district] court's determination of the genuineness of the prosecutor's response is entitled to great deference on review." *Id.* at 404 (quotations omitted).

Mattox argues that the state's reasons for striking A.J. were pretextual because the prosecutor did not comment on A.J.'s behaviors at the time they occurred, the district court did not observe all of A.J.'s reported behaviors, and the prosecutor was also wearing a "low-cut blouse" and female prospective jurors should not be penalized for their clothing choices.

First, the prosecutor did not need to point out A.J.'s behavior or provide a reason for her peremptory challenge until after Mattox objected that the challenge was based on

race. A reason is not required until the second step of the *Batson* analysis. *See McDonough*, 631 N.W.2d at 385.

Second, the district court did not need to observe all aspects of A.J.'s behavior to accept the prosecutor's race-neutral explanations as nonpretextual; it only needed to analyze the genuineness of the prosecutor's response. *See James*, 520 N.W.2d at 404. The district court concluded that A.J.'s apparent favoring of the defense, demonstrated through eye contact and smiling at Mattox, as reported by the prosecutor, was a race-neutral explanation for the peremptory challenge. In rejecting Mattox's assertion of pretext, the district court impliedly determined that the prosecutor's report was credible. The district court's finding that Mattox failed to show pretext is entitled to "considerable deference" because it is based on a determination of the prosecutor's credibility. *See State v. Taylor*, 650 N.W.2d 190, 202 (Minn. 2002).

Finally, the district court did not mention or rely on the prospective juror's dress in finding that the prosecutor's explanation was race neutral and that discrimination was not proved. Attire therefore did not play a role in the decision.

We conclude that Mattox did not meet his burden to show that the state's peremptory challenge of A.J. was purposefully discriminatory. The district court therefore did not clearly err by denying Mattox's *Batson* challenge.

## II.

Mattox raises several additional arguments in his pro se supplemental brief: (1) ineffective assistance of counsel; (2) prosecutorial misconduct regarding notice of

*Spreigl* evidence; (3) introduction of a phone call between Mattox and R.O.'s mother; and (4) sufficiency of the evidence for the false-imprisonment conviction.

### A. Ineffective Assistance of Counsel

Mattox appears to argue that his attorney was ineffective because she did not introduce relationship evidence and did not introduce a letter from R.O. to impeach R.O.'s testimony. To show ineffective assistance of counsel, the defendant must "prove that his counsel's representation fell below an objective standard of reasonableness" and that, but for the error, "the result of the proceeding would have been different." *Gates v. State*, 398 N.W.2d 558, 561 (Minn. 1987) (quotations omitted).

Mattox's objections to his counsel's performance involve trial strategy, which is generally not subject to review as ineffective assistance of counsel. *See Andersen v. State*, 830 N.W.2d 1, 10 (Minn. 2013) ("We will generally not review an ineffective-assistance-of-counsel claim that is based on trial strategy."). We note, however, that counsel's alleged statement that Mattox could not introduce relationship evidence against his victims is unsupported by the record and, in any event, would have been legally correct. *See* Minn. Stat. § 634.20 (2014) (explaining that relationship evidence is evidence of similar conduct *by the defendant* against the victim of domestic abuse or other family members). We also observe that introducing R.O.'s letter could not have affected the outcome of Mattox's trial given R.O.'s testimony about the letter's contents, including cross-examination by Mattox's attorney. Mattox cannot show ineffective assistance of counsel on either of these bases he asserts.

## B. Prosecutorial Misconduct

Mattox next asserts that the prosecutor committed misconduct by failing to provide notice of the state's intent to introduce certain evidence and by causing him to reject a potential plea deal. Because Mattox did not object to this conduct below as prosecutorial misconduct, we must determine whether the prosecutor committed a plain error that affected Mattox's substantial rights. *See State v. Ramey*, 721 N.W.2d 294, 299 (Minn. 2006).

Mattox refers to the challenged evidence as *Spreigl* evidence. But *Spreigl* evidence involves evidence of other crimes, wrongs, or acts under Minn. R. Evid. 404(b). *See State v. Campbell*, 861 N.W.2d 95, 102 (Minn. 2015); *see generally State v. Spreigl*, 272 Minn. 488, 496-97, 139 N.W.2d 167, 173-73 (1965). The prosecutor explained before trial that she did not intend to offer evidence under rule 404(b) and had therefore not provided the corresponding notice.

Mattox instead appears to challenge the prosecutor's introduction of history-of-relationship and domestic-conduct evidence pursuant to Minn. Stat. § 634.20 (2014). But the prosecutor provided notice of her intent to introduce such evidence, and the district court granted the state's motion to allow the introduction of this evidence. Nothing in the record suggests that the prosecutor committed misconduct by introducing this evidence.

Regarding Mattox's plea-bargain argument, the record contains no evidence to support Mattox's allegations. At a pretrial hearing, Mattox announced his rejection of the state's offered plea bargain because he was "under so much duress" and had "ineffective counsel." On appeal, Mattox appears to assert that he rejected the plea bargain because

8

the prosecutor rejected his request to plead guilty to a different charge. The record reveals no prosecutorial misconduct or ineffective assistance of counsel related to Mattox's plea bargaining, and there is no evidence Mattox was "under duress."

## C. Phone Call with R.O.'s Mother

Mattox argues that the district court abused its discretion by allowing the state to introduce into evidence a phone call between Mattox and R.O.'s mother. "Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003).

Contrary to Mattox's assertion, we can find no evidence in the record that this phone call was introduced at trial. The district court overruled Mattox's pretrial objection to the admission of the phone call, and the parties agreed that a cautionary instruction would accompany its introduction, but the state never introduced the phone call. Even if it had, we agree with the district court that the phone call was not improper hearsay because it was not offered for the truth of the matter asserted. *See* Minn. R. Evid. 801(c). There is no evidence that the district court abused its discretion regarding this phone call.

## D. Sufficiency of the Evidence

Finally, Mattox argues that the evidence was insufficient to support his conviction for false imprisonment. When we assess the sufficiency of evidence, "we review the evidence to determine whether the facts in the record and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010) (quotation omitted). We review the record in

9

the "light most favorable to the conviction." *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989).

To be convicted of false imprisonment, Mattox must have knowingly lacked lawful authority to confine or restrain R.O. without R.O.'s consent. *See* Minn. Stat. § 609.255, subd. 2 (2014); 10 *Minnesota Practice*, CRIMJIG 15.04 (2006). Mattox argues that he simply "guided [R.O.] back into the house" at her request and did not hold R.O. against her will. R.O. testified that she followed Mattox into the hall while in a towel to get her keys back from him. Mattox then grabbed her arm and pulled her back into the apartment. At that time, R.O. wanted to go back inside the apartment "without causing a scene." But R.O. testified that she then repeatedly told Mattox to leave the apartment and that he hit her, grabbed her arm, and pulled her unwillingly from the bedroom into the bathroom, where he hit her again. When R.O. eventually ran to another apartment, Mattox again began pulling her back to her apartment. This time, R.O. did not want to go with Mattox. While R.O. may have initially consented to returning to her apartment, the evidence supports the conclusion that R.O. did not consent to Mattox's continued confinement and restraint of R.O. thereafter. The evidence is therefore sufficient to support Mattox's conviction for false imprisonment. *See* Minn. Stat. § 609.255, subd. 2.

**Affirmed.**