*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1653**

State of Minnesota,
Respondent,

vs.

Ian Blair Lindemyer,
Appellant.

**Filed September 26, 2016
Affirmed in part, reversed in part, and remanded.
Peterson, Judge**

Hennepin County District Court
File No. 27-CR-14-28615

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Brittany D. Lawonn, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Susan J. Andrews, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Hooten, Judge; and Bratvold, Judge.

**U N P U B L I S H E D   O P I N I O N**

**PETERSON**, Judge

Appellant challenges his two first-degree criminal-sexual-conduct convictions, one for sexual penetration and the other for sexual contact, arguing that the district court

committed reversible error by admitting *Spreigl* evidence. Because the state failed to provide proper notice of the *Spreigl* evidence and the district court relied on the *Spreigl* evidence when finding appellant guilty of the sexual-contact offense, we affirm in part, reverse in part, and remand.

**FACTS**

A.N. posted an advertisement on Craigslist seeking a live-in housekeeper/nanny position. Appellant Ian B. Lindemyer responded to the advertisement, and, in exchange for a place to stay, A.N. agreed to clean Lindemyer's apartment and occasionally babysit Lindemyer's child. In May 2014, A.N. and her four-year-old daughter D.V. moved into Lindemyer's apartment. Because of the living arrangement, there were short periods when Lindemyer was alone with D.V.

A.N. moved out of the apartment in mid-August after she heard that Lindemyer was being evicted. In mid-September, D.V. revealed to A.N. that she knew about male anatomy, and when A.N. asked her to explain how she acquired this knowledge, D.V. told A.N. that Lindemyer had shown his penis to her and had "asked her to touch it." D.V. then described being sexually touched and penetrated by Lindemyer.

A.N. reported D.V.'s statements to the St. Louis Park police. D.V. was sent for a forensic interview at Cornerhouse, a child-abuse evaluation center, and a transcription of the interview was later admitted into evidence at trial. During the interview, D.V. described the same sexual contact and penetration that she had described to her mother. She also used anatomical dolls and drawings to demonstrate what Lindemyer had done to her; these demonstrations included multiple examples of penetration.

2

Dr. Linda Thompson examined D.V. on October 3, 2014, and found no signs of physical injury. Thompson later testified that, in her experience, 98-99 percent of child sexual-abuse victims who are not examined immediately after a sexual assault show no signs of physical injury. Thompson also testified that, during the examination, D.V. pointed to her genitals and said that was where she was touched by Lindemyer's penis and that it hurt. D.V. also spontaneously described Lindemyer's genitals.

When police executed a search warrant, they found a hand-written note in Lindemyer's car that states:

> 1st incident
> I was in the reclining chair when she jumped on me & hit me in the crotch & I said you just hurt me & then she pointed and grabbed my penis and said whats that? I said this is how men pee & make babies. I said don't touch, that's not for you. She grabbed my penis again & said shhhh this can be our secret. I said who's secret yours & daddys? She nodded yes & I said Im not your dad & if you touch me there one more time Im telling mommy.
>
> 2nd time
> I came home after being on the road & the same thing she wouldn't stop staring & pointing at my crotch. She said mommy isn't around can I touch it? I said no that's isn't right, what are you trying to do here?

Lindemyer was charged with two counts of first-degree criminal sexual conduct, one alleging sexual penetration with a person under age 13 when the actor is 36 months older and one alleging sexual contact with a person under age 13 when the actor is 36 months older. *See* Minn. Stat. § 609.342, subd. 1(a) (2014). Lindemyer waived a jury trial, and his case was tried to the court.

3

D.V. testified at trial, and her testimony was consistent with her forensic interview and the statements she made to her mother. She testified that Lindemyer touched her and penetrated her sexually on more than one occasion.

Over Lindemyer's objection on grounds of prejudice,[1] the district court admitted 21 child-pornography images that police discovered on a Toshiba computer that belonged to K.S., Lindemyer's former girlfriend. K.S. testified that Lindemyer used the computer when they were living together, and, after she moved out, she could not get into the computer because there was a pass code or something that she could not get past. K.S. testified that she did not see Lindemyer put the pass code on the computer, but he was the only other person who used her computer. The state argued that the child-pornography evidence was probative with respect to sexual or aggressive intent, which is an element of the sexual-contact offense. The district court found that "[a] few of the images involve children as young as 2 or 3 years old, some of the images involve apparent pre-teens, and some of the images involve individuals who could either be underage teenagers or young-looking adults."

The district court found Lindemyer guilty on both counts of first-degree criminal sexual conduct. The district court stated six reasons why it found that D.V. was a credible

---

[1] In objecting to the evidence, defense counsel said, "Your Honor, with regards to [the child-pornography evidence], defendant would object as 403. He is charged with criminal sexual conduct in the first degree, not with child pornography." Minn. R. Evid. 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

witness: (1) D.V.'s demeanor indicated that she was fearful or uncomfortable being around Lindemyer in court; (2) D.V. made multiple consistent statements about the sexual assaults that included simulations of sexual penetration; (3) D.V. and A.N. lacked motives to fabricate; (4) D.V. made the initial disclosure of the assaults spontaneously; (5) D.V.'s demeanor was composed during the forensic interview, she was not asked leading questions, she corrected the interviewer more than once, and she did not appear to be seeking attention or approval because she wanted the interview to end; and (6) D.V. gave accurate anatomical descriptions and displayed "sexual knowledge not typical" for her age.

The district court imposed a 144-month sentence for the conviction involving sexual penetration. Lindemyer appeals, arguing that his convictions on both counts must be reversed because the district court erroneously relied on the child-pornography evidence in finding him guilty.

## DECISION

This court reviews a district court's evidentiary rulings for abuse of discretion. *State v. Kennedy*, 585 N.W.2d 385, 389 (Minn. 1998); *see State v. DeWald*, 464 N.W.2d 500, 503 (Minn. 1991) ("Admission of *Spreigl* evidence rests within the sound discretion of the [district] court . . . ."). "A defendant appealing the admission of evidence has the burden to show the admission was both erroneous and prejudicial." *State v. Riddley*, 776 N.W.2d 419, 424 (Minn. 2009).

Lindemyer objected to the child-pornography evidence on the basis that its prejudicial nature outweighed its probative value. *See* Minn. R. Evid. 403 (permitting

exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice"). But a more specific rule, Minn. R. Evid. 404(b), prohibits the admission of evidence of other crimes or bad acts to prove the accused's character in order to show that the accused acted in conformity with that character. "The 'overarching concern' behind excluding such evidence is that it might be used for an improper purpose, such as suggesting that the defendant has a propensity to commit the crime or that the defendant is a proper candidate for punishment of his or her past acts." *State v. Fardan*, 773 N.W.2d 303, 315 (Minn. 2009) (quotations omitted).

Such evidence, which is referred to as *Spreigl* evidence, may, however, be admissible to show motive, intent, absence of mistake, identity, or a common scheme or plan. *State v. Burrell*, 772 N.W.2d 459, 465 (Minn. 2009); *see* Minn. R. Evid. 404(b); *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965).

But *Spreigl* evidence

> shall not be admitted unless (1) the prosecutor gives notice of its intent to admit the evidence . . .; (2) the prosecutor clearly indicates what the evidence will be offered to prove; (3) the other crime, wrong, or act and the participation in it by a relevant person are proven by clear and convincing evidence; (4) the evidence is relevant to the prosecutor's case; and (5) the probative value of the evidence is not outweighed by its potential for unfair prejudice to the defendant.

Minn. R. Evid. 404(b); *see State v. Ness*, 707 N.W.2d 676, 685-86 (Minn. 2006).

Lindemyer did not object to the child-pornography evidence on the ground that it was impermissible *Spreigl* evidence.

> [T]he failure to object to *Spreigl* testimony constitutes waiver of the right to appeal unless (1) there was error, (2) the error

6

> was plain, and (3) the error affects the defendant's substantial rights. If those three prongs are met, we may correct the error only if it seriously affects the fairness, integrity or public reputation of judicial proceedings.

*State v. Washington*, 693 N.W.2d 195, 204 (Minn. 2005) (citation and quotation omitted). "An error is plain if it is 'clear' or 'obvious.'" *State v. Milton*, 821 N.W.2d 789, 807 (Minn. 2012). The third prong of the plain-error test "is satisfied if the error was prejudicial and affected the outcome of the case." *State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998). The defendant has the "heavy burden" of persuasion on this prong. *Id.*

The state did not satisfy the notice requirements of Minn. R. Evid. 404(b) before offering the child-pornography evidence at trial. *See* Minn. R. Crim P. 7.02, subd. 4(a) (requiring notice of *Spreigl* evidence to be given "at or before the Omnibus Hearing . . ., or as soon after that hearing as the other crime, wrong, act, or specific instance of conduct becomes known to the prosecutor"). Therefore, the district court plainly erred by admitting the evidence, which satisfies both the first and second prongs of the plain-error test. *See Milton*, 821 N.W.2d at 807 (stating that "[a]n error is plain if it is 'clear' or 'obvious'"); *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006) (stating that an error is plain if it violates a rule).

To satisfy the third prong of the plain-error test, Lindemyer must show that the child-pornography evidence substantially influenced the district court, acting as fact-finder, to convict. *Washington*, 693 N.W.2d at 204. With respect to the sexual-contact offense,

> "[s]exual contact with a person under 13" means the intentional touching of the complainant's bare genitals or anal opening by

7

the actor's bare genitals or anal opening *with sexual or aggressive intent* or the touching by the complainant's bare genitals or anal opening of the actor's or another's bare genitals or anal opening *with sexual or aggressive intent*.

Minn. Stat. § 609.341, subd. 11(c) (2014) (emphasis added). This intent element makes contact-based criminal sexual conduct a specific-intent crime. *State v. Wenthe*, 845 N.W.2d 222, 232 (Minn. App. 2014), *rev'd on other grounds*, 865 N.W.2d 293 (Minn. 2015).

In finding Lindemyer guilty of the sexual-contact offense, the district court specifically relied on the child-pornography evidence to establish the intent element. The district court stated:

> This touching was done with sexual intent. The images recovered from the Toshiba laptop include multiple images of child pornography involving children around D.V.'s same age. While the laptop belonged to [K.S.], he often used the laptop and [K.S.] was unable to access the laptop after she moved out due to the passcode being changed. [Lindemyer's] viewing of child pornography shows his actions were undertaken with a sexual intent. Furthermore, the circumstances surrounding the contact do not indicate any non-sexual reason for the contact. Therefore, the second element has been proven beyond a reasonable doubt.

Because this statement shows that the district court relied on the child-pornography evidence in determining that Lindemyer acted with sexual intent, we conclude that the erroneous admission of the child-pornography evidence affected the outcome of the case. We also conclude that admitting the evidence without notice affected the fairness of the case because, without notice of the *Spreigl* evidence, Lindemyer was not able to prepare

8

a response to it. We, therefore, reverse and remand Lindemyer's conviction of the sexual-contact offense.

Lindemyer argues that his conviction of the penetration offense should also be reversed. *See* Minn. Stat. § 609.342, subd. 1 (defining first-degree criminal sexual conduct as "engag[ing] in sexual penetration with another person"). But this offense does not include the specific-intent element that is required for the sexual-contact offense. *See* Minn. Stat. § 609.341, subd. 12(2) (2014) (defining "sexual penetration" as specific sexual "acts" or "intrusion[s]" "into the genital or anal openings"); *Wenthe*, 845 N.W.2d at 232 (distinguishing between criminal-sexual-conduct offenses that include an intent element and are specific-intent crimes and criminal-sexual-conduct offenses that do not include an intent element and are general-intent crimes). Lindemyer has made no showing that the district court relied on the child-pornography evidence in finding him guilty of the penetration offense.

Without the child-pornography evidence, the evidence admitted at trial fully supports a finding of guilt on the penetration offense. D.V.'s trial testimony, which the district court found to be credible, was consistent with her two previous accounts of the sexual assaults involving penetration. D.V.'s accounts were sufficient to prove that sexual penetration occurred. We, therefore, affirm Lindemyer's conviction of the penetration offense.

**Affirmed in part, reversed in part, and remanded.**

9